**Roman Lamont FRENCH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 03S00–9911–CR–661.**

Supreme Court of Indiana.

Nov. 22, 2002.

Kay A. Beehler, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

BOEHM, Justice.

In this consolidated appeal, Roman Lamont French challenges both his conviction for cocaine dealing and the denial of post-conviction relief. We hold: (1) French was not denied due process when he appeared, without objection, wearing jail garb in front of a new jury during the habitual offender proceeding; (2) although it is error to require a defendant to appear in jail garb at a habitual offender proceeding, it does not require reversal where no objection was raised; (3) the evidence at the habitual offender proceeding was sufficient to identify French as the person convicted of prior crimes; (4) the trial court did not commit fundamental error when it failed to instruct the jury that it was not required to accept a judicially noticed fact; (5) the evidence enhancing French's conviction to a Class A felony was sufficient; (6) he was not denied the effective assistance of counsel; and (7) the cumulative errors of his attorneys did not substantially damage his defense.

**Factual and Procedural Background**

On February 23, 1998, a confidential informant purchased .24 grams of cocaine from French for $100. French was charged with dealing in cocaine, a Class A felony, and two months later was charged with being a habitual offender. A jury found French guilty of dealing in cocaine. That jury was dismissed and a new jury was impaneled to hear the habitual offender charge a month later.[1] The second jury

1. This is consistent with precedent. *See Denton v. State*, 496 N.E.2d 576, 581 (Ind.1986) ("While in the usual habitual offender determination the same jury hears both the felony charge and the recidivist charge in a bifurcated proceeding, we have previously held that it is permissible for a different jury than the one who heard the case on the underlying felony

found French to be a habitual offender. The trial court then sentenced French to thirty years for the underlying offense and enhanced his sentence by an additional thirty years as a habitual offender. French appealed and also initiated a post-conviction relief proceeding. This Court suspended consideration of the direct appeal and remanded the matter to the trial court for consideration of the issues raised in his post-conviction petition. This consolidated appeal seeks review of both the underlying conviction and the denial of post-conviction relief.

## I. Appearing in Jail Garb at the Habitual Offender Trial

French appeared in full jail garb with handcuffs, shackles, and orange jail clothing at the habitual offender phase of the trial conducted before a new jury a month after the trial of the underlying charge. French contends that this violated his constitutional right to due process.

### A. *The Restraints and Shackles*

■■■ In *Evans v. State*, 571 N.E.2d 1231, 1238 (Ind.1991), this Court concluded that a defendant has the right to appear in front of a jury without physical restraints, unless restraints are necessary to prevent the defendant's escape, to protect those present in the courtroom, or to maintain order during the trial. We have held that "the facts and reasoning supporting the trial judge's determination that restraints are necessary must be placed on the record." *Wrinkles v. State*, 749 N.E.2d 1179,

1193 (Ind.2001) (quoting *Coates v. State*, 487 N.E.2d 167, 169 (Ind.Ct.App.1985)). "An order to restrain the defendant is reviewed for an abuse of discretion." *Forte v. State*, 759 N.E.2d 206, 208 (Ind. 2001).

In a sidebar with attorneys for both the State and defense present, the trial court explained its action as follows:

> At the conclusion of the previous trial in this case, it is my understanding that there was a significant physical altercation between Mr. French and one or more law enforcement officers.[2] I have instructed the law enforcement officers to secure French's ... I think it's his right hand. I think he's left handed ... so that he is able to write. But he also has ankle irons or leg irons, whatever they call them. [Defense counsel], you have an objection to that?

His counsel objected only to the arm constraint because "it could be seen by the jury." The trial court overruled the objection "based upon the altercation that happened as the jury was leaving the courtroom during the last proceeding."

The trial court complied with the requirements of law by stating, on the record, facts and reasoning supporting its determination that restraints were necessary. Based on the reasons given by the trial court, we cannot say that the trial court abused its discretion in having the defendant handcuffed and shackled.

---

charge to determine a defendant's habitual offender status.").

**2.** This altercation was not documented in the record of the trial court proceedings. In the post-conviction proceedings, French testified that after the verdict was read, he tried to talk to his family. The deputy told him he was not allowed to speak to his family, and he "jerked away." He stated, "Everything just got out of control. I don't know why I jerked away

because he'll tell you, I didn't throw punches at him.... It just got out of hand and I think they might have been expecting maybe, you know, even my family was going to get upset.... So then [the extra security] started rushing me. Then ... we ended up wrestling until we got like probably about the middle of the floor then talked to me ... it was them that got me to calm down."

## B. *Jail Clothing*

■ At his habitual offender proceeding, French appeared in bright orange clothing with the word "jail" on the back. The United States Supreme Court has held that a defendant cannot be compelled to appear before a jury in identifiable prison clothing because this may impair the presumption of innocence. *Estelle v. Williams*, 425 U.S. 501, 502–05, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). French argues that requiring him to wear prison clothes during the habitual offender phase of his trial in front of a separate jury violated his right to due process.

■ French made no objection to the jail garb. The failure to object to being tried in prison clothes negates the compulsion necessary to establish a constitutional violation. *Id.* at 512–13, 96 S.Ct. 1691. Although it is not a denial of due process if a defendant appears in jail garb without objection, we agree that the same reasons requiring an appearance in street clothes at trial also apply in a supplemental proceeding before a jury such as the habitual offender phase. Accordingly, if a defendant objects, it is error to require the defendant to appear in jail garb at the habitual offender phase. Here, however, there was no objection and the issue is not preserved.

■ Recognizing that no objection was raised in the trial court, French contends that his appearance in jail garb constituted fundamental error reviewable despite the lack of objection. We do not agree. Although, as Justice Sullivan points out, French is entitled to the presumption of innocence as to the habitual offender charge, he was convicted of the underlying charge of dealing cocaine, and the jury was informed of this. The Ninth Circuit addressed a similar issue in *Duckett v. Godinez*, 67 F.3d 734, 746 (9th Cir. 1995), where the defendant appeared in prison clothes, handcuffs, and a security chain before a sentencing jury. Although a sentencing proceeding is not identical to the habitual offender phase, in both instances the presumption of innocence of the underlying charge no longer applies. As the Ninth Circuit put it: "His condition as a prisoner is no surprise to the jury, which just found him guilty. Prison clothing cannot be considered inherently prejudicial when the jury already knows, based upon other facts, that the defendant has been deprived of his liberty." *Id.* at 747. In French's case a second jury was assembled for the habitual offender phase of the trial. When this is done the jury is to be informed of the underlying felony that provoked the habitual offender charge. *Gilliam v. State*, 563 N.E.2d 94, 96 (Ind.1990) (The State is not required to prove the primary underlying felony to a second jury which has been subsequently assembled during a habitual offender proceeding.); *see also Denton v. State*, 496 N.E.2d 576, 581 (Ind.1986) (There is no harm in a trial court informing a jury subsequently assembled during the habitual offender proceeding that a previous jury returned a guilty verdict on the underlying felony.). In view of these authorities we do not believe this error approaches fundamental error requiring retrial despite French's failure to object.

## II. Evidence Identifying French as the Prior Offender

■ French contends that the evidence used to connect him to the documents presented by the State violated his right to counsel and his right against self-incrimination. At the habitual offender phase of the trial, documents from two predicate felony convictions included a date of birth and social security number of the defendant, as well as his name. Columbus Police Officer Matt Myers testified to

French's date of birth and social security number listed on the charging information in this case and stated that this information had been provided by French when he was booked into jail on the charge in this case. He further testified that he was not present at the initial hearing in this case but had listened to a tape of the hearing where French again provided this information. Based on his familiarity with French's voice, Myers opined that the person on the tape was French. He then testified that the date of birth and social security number on the records of the two prior felony convictions were the same as those appearing in the booking information and in the charging information, and given at the initial hearing in this case.

Relying on *Palmer v. State*, 679 N.E.2d 887, 891 (Ind.1997), French argues that Myers' testimony prejudiced his defense because "[p]roof that an individual named in an habitual offender information and an individual so named in various documents is insufficient to [prove] the person committed a prior crime." French suggests that fingerprints on documentary exhibits or prior convictions should have been offered.

He also contends that proof of French's social security number and date of birth in the form of testimony to admissions by French was improper because it admitted into evidence statements French made in custody when being booked without counsel. Assuming French had not been advised of his Miranda rights at the time he gave this information, this claim is raised for the first time on appeal and was not presented to the trial court. It is a classic example of the justification that an issue be raised at trial to be preserved for appeal. Had this claim been presented at the habitual offender proceeding, it would presumably have been a simple matter to prove French's social security number and

date of birth by other means. There is no fundamental error here, and the issue is not available on appeal.

Finally, pictures of the "Roman French" in the booking information for two of the felonies were given to the jury as exhibits. This evidence was more than mere proof of French's "common name." Indeed, we have previously held that a defendant's date of birth and picture is sufficient evidence for a jury to find the defendant sitting at the defense table was the same defendant listed in the charging information. *Fozzard v. State*, 518 N.E.2d 789, 792 (Ind.1988).

### III. Failure to Instruct Jury on Judicially Noticed Exhibits

■ French argues that the trial court committed fundamental error when it failed to instruct the jury pursuant to Indiana Evidence Rule 201(g) after it took judicial notice of the charging information and the court's own order recording French's conviction on the underlying felony. French contends the court was required to carry out the direction of Indiana Evidence Rule 201(g). That Rule provides, "In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed." There was no request for such an instruction. French argues that the court's failure to give the required instruction resulted in fundamental error that requires reversal despite his failure to present the issue to the trial court. Specifically, he contends that fundamental error occurred when "[t]he jury saw before them an accused who was in jail clothing, shackled, and handcuffed, [and] heard unequivocally from the court, stated as a fact, that French had been convicted of a felony on April 1, 1999." Although the instruction contemplated by Rule 201(g) was required if requested, there is no claim that the judicially noticed facts—a document

from the court's own records—were incorrect. Accordingly, there is no fundamental unfairness in this omission and failure to request an instruction forecloses the issue on appeal.

## IV. Sufficiency of the Evidence

French contends that he was denied his fundamental right to require the State to prove each element of the offense charged beyond a reasonable doubt, in violation of the United State Constitution and the Indiana Constitution. French was charged with dealing in cocaine as a Class A felony for delivering cocaine "within 1000 feet of 9th Street Park and/or St. Bartholomew Catholic Parish Pre–School." French argues that the dealing in cocaine charge should not have been enhanced to a Class A felony because there was insufficient evidence to prove French dealt cocaine within 1000 feet of school property.

### A. *School Property*

■ French contends that there was no evidence to support the proposition that St. Bartholomew Preschool was "school property" for purposes of the enhancement provided by Indiana Code section 35–48–4–1 for dealing within 1000 feet of a school. Section 35–41–1–24.7 provides, in relevant part, that the term "school property" includes "a building or other structure owned or rented by . . . [a] private school (as defined in IC 20–9.1–1–3)." Section 20–9.1–1–3 defines a private school as "any school which is not supported and maintained by funds realized from the imposition of a tax on property, income or sales."

The Director of St. Bartholomew Preschool testified that the preschool is part of the St. Bartholomew's Catholic Church. She testified that the school was a private school, did not receive state funding, and was privately sponsored by the church. She also stated that the children at the school range in age from twenty months to six years; they learn their numbers and alphabet, sing songs, go on field trips, and play. She testified that the building in which the school is located is owned by the parish.

French contends that based on this information, one may speculate that St. Bartholomew was nothing more than a "church run babysitting service." We disagree. We think that this kindergarten level institution falls within the definition of "school property." In any event, the information charged French with dealing in cocaine within 1000 feet of a school or park. French has made no argument that the evidence was insufficient to show that Wilson Street Park was a park. Consequently, the enhancement to a Class A felony was proper.

### B. *Distance*

■ French argues that the evidence was insufficient to establish the distance between the transaction and either the school or the park. Shawn Plummer, an auto CAD technician for the City Engineer's office, testified that the distance from the address where the dealing took place was 790 feet from St. Bartholomew's pre-school and 661 feet from the Wilson Street park. Plummer's job entails making city maps, putting new subdivisions on the maps, and "keep[ing] the map accurate with the city." He stated that he enters an address into the computer, and his computer calculates everything within a 1000 feet radius of that address and produces a map. On cross-examination, Plummer admitted that he did not physically measure the distance in this case, did not write the computer program, did not know how the program worked, and did not know whether it was accurate.

French objected to the map, because "no one actually went out there and physically

measured [the distance and] there's no foundation laid that these distances are actually the distances that that computer generated." We assume the computer generated map could be established to be reliable. In any event, before trial resumed the following day, Officer Curt Beverage physically measured the distance between the place of the dealing and the preschool and the place of dealing and the park. He used a one-hundred-foot heavy-duty steel tape that he calibrated by comparison with a separate twenty-five foot tape. He also checked the accuracy of the twenty-five foot tape against a twelve-inch ruler. Beverage testified that the distance from the place of dealing and just past the property line of the school was 652 feet and to the far end of the school building was 964 feet. Beverage stated that the distance from the place of dealing and the park was 717 feet. This evidence was sufficient.

## V. Ineffective Assistance of Counsel

Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant so much that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694, 104 S.Ct. 2052; *Lowery v. State*, 640 N.E.2d 1031, 1041 (Ind.1994). To meet the appropriate test for prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. Failure to satisfy either prong will cause the claim to fail. *Vermillion v. State*, 719 N.E.2d 1201,

1208 (Ind.1999). Indeed, most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Williams v. State*, 706 N.E.2d 149, 154 (Ind.1999). French claims that he was denied the effective assistance of counsel because his attorneys (1) conducted little or no pretrial investigation of his alibi witness, (2) lacked knowledge of prevailing law and precedent, and (3) allowed French to appear in jail garb in front of a new jury during the habitual offender proceeding.

### A. Lack of Pretrial Investigations

French contends that his attorneys conducted little or no pretrial investigation and specifically failed to investigate his alibi. French's attorney filed an Amended Notice of Alibi on March 23, 1999, stating that French was with Heather Clarkson at the time of the alleged dealing. A pretrial conference was scheduled the day before French's trial, March 29, 1999, to discuss this issue, but French's attorney failed to appear because her staff was told that the hearing was a pretrial conference that would be telephonic.

Because Clarkson was listed as French's alibi and a witness who would be testifying, Curt Beverage, the supervisor of the narcotics unit, interviewed Clarkson on behalf of the State the night before French's trial began. Initially, she told Beverage that she was on a date with French on the date of the alleged dealing. Later, however, after Beverage told her that he had French on tape making the deal and that her daughter would be taken away if she were arrested for conspiracy to deal, she changed her story. She then told him that she could not remember exactly when they were together and signed an affidavit stating so.

When French's attorney brought up the issue of an alibi defense at trial, the trial

court ruled that after the State rested, French would be allowed to "bring Ms. Clarkson over and have a hearing outside the jury with regard to whatever she may say." Once the State presented its case, however, French's attorneys moved for a mistrial based on judicial misconduct and prosecutorial misconduct, which included intimidation of Clarkson in her interview with Beverage. The judge denied the motion. No motion to present an alibi defense was made, and Clarkson was not called as a witness during French's trial.

At the post-conviction proceeding, French's attorney testified that she remembered that French told her that Clarkson had information about the case, but did not recall whether she spoke with Clarkson. She testified that her investigators found that many of the witnesses' names that French gave her were not "panning out to say what he told us they were going to say." She also stated:

> French gave us the names of several witnesses. He didn't give us the alibi name until later. Many of those witnesses were hesitant in talking with us. Many of them indicated that they had been intimidated by Mr. French and we did not want to get into a situation where we were having a witness who we felt may have been lying.

She testified that she talked to all of the witnesses who were called for trial, although some were interviewed in the hallway of the courtroom.

At the post-conviction hearing, Clarkson testified that she had never met any of French's lawyers and that no one approached her identifying themselves as an investigator working for his attorneys. She also admitted that she was not certain

that she was with French on the date of the alleged dealing and stated she would have testified at his trial that it was possible he was at her house, but "wouldn't exactly said that he was at my house that night because I don't know that for sure."

French contends that the jury should have had an opportunity to determine whether or not his alibi was viable. He argues that Clarkson was caught off guard by Beverage's interview and "could have reconstructed events more clearly closer to the time of trial." French contends that if Clarkson had been called at trial, she would have stated that she well could have been with French on the night in question and that the confidential informant was a liar.

French failed to show that he was prejudiced by his attorney's failure to interview Clarkson. In her testimony during the post-conviction proceeding, Clarkson was very clear that if she had been called to testify at French's trial, she would have testified only that it was "possible" that French could have been with her.[3] Moreover, Clarkson stated at one point during the post-conviction proceeding that she would not have testified at all at French's trial after signing the affidavit the night before. Based on this evidence, French has failed to meet his burden of proof that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

 Finally, French contends for the first time in his reply brief that "the overall effect of counsel's inadequate performance reveals that counsel's failure to object to various errors as they occurred at

---

**3.** She stated at the post-conviction hearing, "I would have testified that [French being at my house] was possible. . . . But I wouldn't exactly said that he was at my house that night because I don't know that for sure." She also stated, "I couldn't tell them at trial if I was or if I was not [with French] because I don't know."

trial heightens French's burden on appeal." French has waived this issue by not raising it in his principal brief. *Ross v. State*, 429 N.E.2d 942, 945 (Ind.1982).

### B. *Lack of Knowledge of Prevailing Law and Precedent*

 French also argues he was denied the effective assistance of counsel because his counsel demonstrated lack of knowledge of prevailing law and precedent. Specifically, he argues that Watkins appeared to be without knowledge of the prevailing law under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, the record does not reflect that the prosecutor used preemptory challenges to exclude an identifiable group from French's jury and there is no basis to conclude that a *Batson* issue would have been properly raised. There is, therefore, no showing of prejudice.

### C. *Allowing French to Appear in Jail Garb at the Habitual Offender Proceeding*

 Finally, French contends he had ineffective assistance of counsel because his counsel allowed French to appear before an entirely new jury for trial on the habitual offender enhancement charge in jail clothes, handcuffed, and shackled. At the post-conviction proceeding, his attorney did not recall any conversations with French with respect to his appearing in jail clothes. She stated, "It's my understanding he had clothing over there. And I think it was his choice to do that." She stated that she did not tell French that it did not matter if he was in jail clothes because it was only a habitual proceeding. French, however, recalled that when his attorney saw French in jail clothes before the habitual phase of the trial began, she asked him why and was told he had not been allowed to dress. According to

French, his attorney responded that "it didn't matter" because he had already been convicted. The attorney denied this exchange and stated she "would never let a defendant appear before a jury in jail clothes without talking to the defendant about it and if the defendant objected, [she] would have talked to the Judge."

For the reasons given in Part I of this opinion, French was not denied due process by appearing at the habitual offender proceeding in handcuffs, shackles, and jail clothing. We cannot say that this inconsistent evidence established that counsel was ineffective or inadequate in the manner in which she carried out her duties to his client. In any event, it seems clear that the result of the proceeding was not affected by counsel's performance. The issue at this proceeding was whether French had two prior felony convictions. As to that, the evidence was clear, and French has failed to show prejudice from his counsel's failure to object to his wearing jail clothes.

## VI. Reversal for Cumulative Errors By Counsel

 French contends that the cumulative errors by his counsel effectively resulted in no defense at all. "Errors by counsel that are not individually sufficient to prove ineffective representation may add up to ineffective assistance when viewed cumulatively." *Pennycuff v. State*, 745 N.E.2d 804, 816–17 (Ind.2001). A conviction based upon an accumulation of defense attorney errors, when counsel's mistakes do substantial damage to the defense, must be reversed. *Williams v. State*, 508 N.E.2d 1264, 1268 (Ind.1987). Here, however, the testimony of the informant, French's admission that he was the one who answered the phone calls from the informant and agreed to sell her cocaine, and the testimony of police officers that they recognized French's voice on the body wire worn by the informant during

the dealing were sufficiently persuasive. There is no reasonable probability that the alleged errors made a difference.

## Conclusion

We affirm the trial court's conviction and habitual offender enhancement and affirm the post-conviction court's denial of post-conviction relief.

SHEPARD, C.J., and DICKSON, J., concur.

SULLIVAN, J. concurs in part and dissents in part with opinion in which RUCKER, J., concurs.

SULLIVAN, Justice, concurring and dissenting.

I concur in the majority's opinion affirming French's conviction for dealing cocaine and the denial of his petition for post-conviction relief therefrom. I respectfully dissent, however, with respect to its holding affirming French's adjudication as a habitual offender.

In my view, the trial court committed fundamental error when it permitted French to appear at the habitual offender proceeding in bright orange clothing with the word "JAIL" on the back.

The majority points out that, according to the United States Supreme Court, a defendant cannot be compelled to appear before the jury in identifiable prison clothing because this may impair the presumption of innocence. *Estelle v. Williams*, 425 U.S. 501, 502–05, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). *Estelle* held that a defendant is required to object to being tried in jail garb in order to make out a federal due process violation.

The majority suggests another reason why, 25 years after *Estelle*, an Indiana court would permit a defendant to stand trial in bright orange clothing with the word "JAIL" on the back. It cites with apparent approval a Ninth Circuit case that allowed the defendant to face a sentencing jury in prison clothing during the penalty phase of a bifurcated trial. The majority analogizes that case to this on grounds that, in both, "the presumption of innocence of the underlying charge no longer applies."

But French was not facing "the penalty phase of a bifurcated trial." He faced a jury of his peers as to his guilt or innocence of being a habitual offender. *See Seay v. State*, 698 N.E.2d 732, 734 (Ind. 1998) ("determining the habitual offender *penalty* is clearly different from determining habitual offender *status*") (emphasis in original). The presumption of innocence did apply as to whether he was a habitual offender.

The standard for fundamental error is whether the error was so prejudicial to the rights of the defendant that a fair trial was impossible. *Boatright v. State*, 759 N.E.2d 1038, 1042 (Ind.2001). For a combination of reasons, I think that standard is met here.

First, contrary to the majority's assertion that "[t]he issue at this proceeding was whether French had two prior felony convictions," at issue was whether French was a habitual offender. And "even where the jury finds the facts of the prerequisite prior felony convictions to be uncontroverted, the jury still has the unquestioned right to refuse to find the defendant to be a habitual offender at law." *Seay*, 698 N.E.2d at 734 (citations omitted).

Second, the overwhelmingly adverse prejudicial effect of appearing before the jury in jail clothing is obvious. As Chief Justice Burger wrote in *Estelle*:

The potential effects of presenting an accused before the jury in prison attire need not, however, be measured in the

abstract. Courts have, with few exceptions, determined that an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system. [Citations omitted.] The American Bar Association's Standards for Criminal Justice also disapprove the practice. ABA Project on Standards for Criminal Justice, Trial by Jury, § 4.1(b), p. 91 (App. Draft 1968). This is a recognition that the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable risk is presented of impermissible factors coming into play. *Turner v. Louisiana,* 379 U.S. 466, 473 [85 S.Ct. 546, 13 L.Ed.2d 424] (1965).

*Estelle,* 425 U.S. at 504–05, 96 S.Ct. 1691 (footnote omitted).

In addition, as our Court has noted before, the consequences of a habitual offender adjudication are extremely severe. *See Seay,* 698 N.E.2d at 733. And it is a small imposition at most to require a trial court to make sure a defendant knows he or she has the option of appearing before the jury in civilian clothes. *See Estelle,* 425 U.S. at 504, 96 S.Ct. 1691 ("Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience.").

RUCKER, J., concurs.