**Adrian REED, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A04–0601–PC–31.

Court of Appeals of Indiana.

Nov. 20, 2006.

Susan K. Carpenter, Public Defender of Indiana, Victoria Christ, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, J.T. Whitehead, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

### OPINION

FRIEDLANDER, Judge.

Adrian Reed appeals the denial of his petition for post-conviction relief (PCR), by which he challenged the sentence imposed upon his conviction of murder, possession of a firearm by serious violent felon (SVF), a class B felony, and carrying a handgun without a license, a class C felony. Reed presents the following restated issues for review:

1. Did the post-conviction court err in denying Reed's claim that his sentence was improper?

2. Did Reed receive ineffective assistance of trial and appellate counsel?

We affirm.

On May 8, 2002, Reed was convicted of murder, possession of a firearm by a serious violent felon, and possession of a handgun without a license. Those convictions were affirmed by this court on direct appeal in a memorandum decision. The facts underlying the convictions were set out therein as follows:

> Around noon on June 24, 2000, Reed and Charles Lambert stopped by Douglas Hart's house in Indianapolis to inquire whether Hart had a scale for weighing drugs. Hart did not have a scale and Reed and Lambert left Hart's house. Later that afternoon, while Hart was sitting on his porch, he saw Reed and Lambert drive by in Lambert's van. Hart then saw the van go down a nearby alley. Twenty to thirty minutes later, Hart heard gunshots and then saw Reed run through a neighbor's yard and across the street.

> From inside her house, Lambert's mother, Elizabeth Lambert, heard gunshots and then heard Lambert yelling for her. Lambert's mother ran outside to the alley where Lambert was lying on the ground near his van. Lambert had been shot multiple times in his abdomen and chest. Lambert's mother asked Lambert who shot him, and he replied that Little Doug would know. Hart is also known as Little Doug.

> Approximately a half-hour after Lambert was shot, Detective Marcus Kennedy spoke with Lambert in the hospital emergency room. Doctors and nurses were treating Lambert, but during a lull in the action, Detective Kennedy was able to speak with Lambert as Lambert was about to be taken into surgery. Lambert was bleeding and moaning off and on, but was alert and able to answer Detective Kennedy's questions.

> Lambert told Detective Kennedy that someone to whom he had given a ride pulled out a gun in an attempt to rob Lambert and then shot him. When asked if he knew who shot him, Lambert replied that he did not know the person's name, but that Little Doug knew. Lambert also gave Detective Kennedy a description of the person who shot him. He told Detective Kennedy that either the shooter or Little Doug drove or hung around a burgundy Monte Carlo in the area.

> Later that night Lambert died as a result of the gunshot wounds. Also later that night, Reed told Hart that Reed had pulled out a gun to try to rob Lambert and when Lambert grabbed for the gun, Reed started shooting Lambert. Subsequently, Reed told Karmen Parrish that he had killed someone.

> On May 30, 2001, Reed was charged with murder, unlawful possession of a firearm by a serious violent felon, and

carrying a handgun without a license as a Class A misdemeanor. In a separate information as part II of the carrying a handgun without a license offense, Reed was charged with the offense as a Class C felony because he had been convicted of a felony within the fifteen years preceding the date of the present offense.

Reed's brother, Jonal Reed ("Jonal"), was charged with assisting a criminal, a Class C felony, for concealing and carrying away the handgun used in the commission of the murder. He was also charged with carrying a handgun without a license, a Class A misdemeanor. Reed's charges of murder and carrying a handgun without a license as a Class A misdemeanor and Jonal's charges of assisting a criminal and carrying a handgun without a license as a Class A misdemeanor were tried together in front of a jury.

At trial, Parrish testified that soon after the shooting, Reed offered to give Parrish his burgundy Monte Carlo if Parrish would say that he had purchased the car from Reed a month previously. Additionally, Parrish testified that either Reed or Jonal told Parrish that a detective would be contacting Parrish about the car. When questioned, Parrish told the detective that he had purchased the car a month before with a two hundred dollar down payment and that he still owed four hundred dollars.

The jury found Reed guilty of murder and carrying a handgun without a license as a Class A misdemeanor. Part II of the carrying a handgun without a license charge and the possession of a firearm by a serious violent felon charge were tried by the court after Reed waived his right to a jury trial on those charges. Based upon Reed's stipulation that he had previously been convicted of dealing in cocaine, a Class B felony, the trial court found Reed guilty of possession of a firearm by a serious violent felon and enhanced the carrying a handgun without a license conviction to a Class C felony. Reed was sentenced to an aggregate term of eighty-five years.

*Reed v. State*, No. 49A04-0205-CR-233, 787 N.E.2d 519 (Ind. Ct.App., 2003) *slip op.* at 2-5 (footnotes omitted).

On April 15, 2004, Reed, pro se, filed a PCR petition. An attorney for the State Public Defender's Office filed an appearance on Reed's behalf and assumed representation in Reed's PCR action. On December 15, 2005, following a hearing, the court denied Reed's PCR petition. This appeal ensued.

We note at the outset that this is a post-conviction proceeding. Our Supreme Court has observed that the completion of the direct appeal process largely closes the door to a criminal defendant's claims of error in conviction or sentencing. *See Allen v. State*, 749 N.E.2d 1158 (Ind. 2001), *cert. denied*, 535 U.S. 1061, 122 S.Ct. 1925, 152 L.Ed.2d 832 (2002). Post-conviction procedures, however, permit defendants to present a narrow set of claims. *See* Ind. Post–Conviction Rule 1(1). "The scope of the relief provided for in these procedures is limited to 'issues that were not known at the time of the original trial or that were not available on direct appeal.'" *Allen v. State*, 749 N.E.2d at 1164 (quoting *Ben–Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind.2000), *cert. denied*, 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002)). Issues that were available but not presented upon direct appeal are waived, and issues that were litigated adversely to the defendant are res judicata. *Allen v. State*, 749 N.E.2d 1158.

Our standard of review when evaluating claims of ineffective assistance of counsel is well settled. To prevail, a defendant

must establish the two components set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must first show that counsel's performance was deficient. *Id.* To establish this element, the petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious they resulted in a denial of the Sixth Amendment right to counsel. *Id.* Second, the petitioner must demonstrate that the deficient performance prejudiced the defense. *Id.* Prejudice may be established by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Finally, our supreme court has held, in "post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Sanders v. State,* 765 N.E.2d 591, 592 (Ind.2002). Thus, freestanding claims of error that were available at the time but not raised upon direct appeal are waived for purposes of post-conviction relief. *Sanders v. State,* 765 N.E.2d 591.

### 1.

■ Reed contends the PCR court erred in denying his claim that his sentence was improper. Specifically, he contends the trial court erred in two respects in enhancing his sentence. We note that both contentions were available at the time of Reed's direct appeal but were not presented therein. Thus, they are waived. *Id.* Even were they not waived, they do not warrant reversal on the merits.

Reed's first contention with respect to sentencing is that the court improperly based the enhancement, at least in part, upon a prior conviction that was also used to qualify Reed as a serious violent felon with respect to the SVF conviction. According to Reed, this violated his "rights to due process, due course of law, equal protection and privileges, the prohibition against double jeopardy and cruel and unusual punishment secured by Article One, Sections Twelve, Fourteen, Eighteen and Twenty–Three of the Indiana Constitution, and the Fifth and Fourteenth Amendments to the United States Constitution." *Appellant's Appendix* at 1.

■ In support of this argument, Reed cites *Hatchett v. State,* 740 N.E.2d 920 (Ind.Ct.App.2000), *trans. denied.* *Hatchett* does indeed stand for the proposition that the predicate felony supporting an SVF conviction may not also be used as part of the criminal history cited to justify an enhanced sentence for that same offense. *Hatchett* also teaches, however, that the improper use of that predicate offense does not automatically render the original sentence unsustainable. In that case, the trial court imposed an enhanced sentence for Hatchett's SVF conviction. The court cited Hatchett's extensive criminal history as supporting the enhanced sentence. In discussing Hatchett's criminal history, the trial court specifically noted the robbery conviction that served as the predicate for the SVF conviction. The *Hatchett* court indicated such was erroneous, but nevertheless affirmed the sentence, explaining:

> We agree with Hatchett that "[a] factor constituting a material element of a crime cannot be considered an aggravating circumstance in determining sentence." *Johnson v. State,* 687 N.E.2d 345, 347 (Ind.1997). However, the remainder of Hatchett's criminal and de-

linquent history is a valid aggravating factor that the trial court could have considered in imposing sentence. *See* IND.CODE § 35–38–1–7.1(b)(2). Hatchett's PSI lists three juvenile adjudications, including a true finding for theft. As an adult, Hatchett was convicted of resisting law enforcement, indecent exposure, and operating a vehicle while intoxicated. Aside from Hatchett's robbery conviction, we conclude that the trial court properly considered his criminal and delinquent history as an aggravating factor.

*Id.* at 928 (footnote omitted). Thus, pursuant to *Hatchett,* a sentence for an SVF conviction that was enhanced based upon a criminal history that included the predicate felony is sustainable if the remainder of the defendant's criminal history warrants it.

██ In imposing sentence, the trial court gave the following summary of Reed's criminal history:

I find as aggravating circumstances the criminal history, fourteen juvenile arrests, nineteen adult arrests. True findings include theft on February 23rd of '88, criminal trespass April 2nd of '90, burglary as a B Felony March 2nd of '90, escape as a C Felony July 30th of '90, and criminal trespass October 30th of '92, criminal mischief September 20th of '91. As an adult you've received convictions for carrying a handgun without a license June 29th of '95, dealing cocaine as a Class B Felony May 9th of '96, and on that case your probation was revoked for violating terms and conditions of your probation, unlawful possession of a firearm by a serious violent felon and possession of cocaine on October 26th of 2001, that was your Criminal Court Four case, and carrying a handgun without a license as a Class C Felo-

ny on March 28th of 2002 in Criminal Court One.

*Appellant's Appendix* at 158. We note that Reed's criminal history is significantly more extensive than was Hatchett's. More importantly, Reed's predicate offense is proportionately a smaller part of the whole criminal history than was the case in *Hatchett.* Therefore, although the trial court erred in considering Reed's class B-felony conviction as a part of the criminal history aggravator, the remainder of Reed's criminal and delinquent history, also cited by the trial court, was of such a character as to justify an enhanced sentence. *See Hatchett v. State,* 740 N.E.2d 920.

██ The second allegation of sentencing error concerns the trial court's decision to order the twenty-year sentence imposed upon Reed's SVF conviction to run consecutive to a sentence imposed for a different SVF conviction in a different case and a different court. In addition to the instant SVF conviction, Reed also was convicted of an SVF offense in 2001, in a different Marion County courtroom. In both instances, the same felony served as the predicate for the SVF charge, i.e., the 1996 dealing in cocaine conviction under cause number 49G209601 CF008463. Reed contends this was improper.

██ Our Supreme Court has held, "[t]rial courts, in the absence of express statutory authority, cannot order consecutive sentences." *Kendrick v. State,* 529 N.E.2d 1311, 1311 (Ind.1988). In Indiana, express statutory authority for consecutive sentences is found at I.C. § 35–50–1–2, which states, in pertinent part: "Except as provided in subsection (d) or (e), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively.... *The court may order terms of imprisonment to be served consecutively even if the sentences are not*

*imposed at the same time.*" I.C. § 35–50–1–2(c) (emphasis supplied). The foregoing confers general authority to impose consecutive sentences where, as here, the sentences stem from different cases in different courts. Reed, however, advocates a restriction upon that general authority for cases involving multiple SVF convictions.

In pressing this argument, Reed likens SVF convictions to habitual offender enhancements because in both cases, a defendant is subjected to longer sentences for committing a particular criminal act, based upon having been found guilty of previous criminal conduct. Reed then notes that our Supreme Court has forbidden "the pyramiding of habitual offender sentences." *Starks v. State*, 523 N.E.2d 735, 736 (Ind.1988). He reasons that a trial court also may not "pyramid" multiple SVF sentences involving the same predicate offense. This rationale is viable if an SVF offense is tantamount to an habitual offender enhancement. We are persuaded, however, that the two are fundamentally different.

The principal cases cited in support by Reed, i.e., *Conrad v. State*, 747 N.E.2d 575 (Ind.Ct.App.2001), *trans. denied,* and *Starks v. State*, 523 N.E.2d 735, plainly address habitual offender enhancements. In each case, the court's holding specifically focuses upon sentence enhancements under habitual offender statutes. *See e.g., Conrad v. State*, 747 N.E.2d at 595 ("a defendant convicted of unlawful possession of a firearm by a serious violent felon may not have his or her sentence enhanced under the general habitual offender statute by proof of the same felony used to establish that the defendant was a 'serious violent felon' "); *Starks v. State*, 523 N.E.2d at 737 ("[i]n the absence of express statutory authorization for such a tacking of habitual offender sentences, there is none"). *Starks* is easily distinguishable because it announced a principle based

upon circumstances not present here, i.e., when a trial court is engaged in the process of meting out several sentences to a defendant at the same time, it may not impose multiple habitual offender enhancements and order that they are to run consecutively. This case does not involve habitual offender enhancements, much less multiple habitual offender enhancements in one sentencing order.

*Conrad* is somewhat different. The *Conrad* panel was confronted with a situation in which the same offense was used as the predicate offense for an SVF conviction, and as one of the predicate offenses for an habitual offender finding and consequent sentence enhancement. The panel even offered that "the defendant's serious violent status does realistically serve as an 'enhancement' in that it increases the potential punishment for 'possession of a firearm'[.]" *Conrad v. State*, 747 N.E.2d at 594. Although it is true that a defendant receives a greater sentence for possessing a firearm if he or she is a serious violent felon, we believe it is not entirely accurate to view the increased sentence resulting therefrom as an enhancement based upon status, as is clearly the case with habitual offender enhancements. Rather, we agree with the post-conviction court here that the critical difference between habitual offender enhancements and the greater sentence attending an SVF conviction is that, unlike habitual offender enhancements, an SVF offense "is a crime separate and distinct from carrying a handgun without a license and cannot be considered an enhancement thereof." *Lewis v. State*, 769 N.E.2d 243, 249 (Ind.Ct.App.2002) (quoting *Hatchett v. State*, 740 N.E.2d at 923 n. 3). That is especially so where, as here, the multiple SVF offenses were committed at entirely different times. Thus, we are not concerned with the issue that essentially lies at the heart of cases like *Conrad* and *Starks, i.e.,* the stacking of multiple punishments for a single offense.

In this case, Reed committed two separate acts that violated I.C. § 35–47–4–5 in that he possessed a firearm after having been convicted of a qualifying predicate felony. The greater penalty for an SVF conviction reflects that the offense is elevated (i.e., is a more serious offense) by virtue of the fact that the defendant has a qualifying prior conviction. Thus viewed, it is not correct, with respect to the SVF convictions, to say that Reed's *sentence* was enhanced in each case because of a prior conviction. Rather, Reed received lengthier sentences commensurate with the two more serious (that is, more serious than mere illegal possession of a firearm) offenses of which he was convicted.

As noted previously, I.C. § 35–50–1–2 permits the imposition of consecutive sentences for separate convictions where appropriate, and we perceive nothing in that provision that places multiple SVF convictions outside its ambit. Therefore, the trial court did not err in ordering that the sentence for the instant SVF conviction is to be served consecutive to the sentence to the first SVF conviction.

### 2.

▮ Reed contends his trial and appellate attorneys rendered ineffective assistance. Both contentions involve the same underlying claims of error. He maintains trial counsel rendered ineffective assistance by (1) failing to object to the use of the 1996 dealing conviction as an aggravator after it had been cited as the predicate offense supporting the SVF conviction, and (2) failing to object to the imposition of consecutive sentences for the two SVF convictions. He maintains appellate counsel rendered ineffective assistance in failing to appeal those issues on direct appeal.

Those issues were thoroughly discussed above on the merits. We agreed with Reed that the predicate felony supporting an SVF conviction may not also be used as part of the criminal history justifying an enhanced sentence for the same SVF offense, and therefore that the trial court erred in that regard. We also concluded, however, that the remainder of Reed's extensive and serious criminal and delinquent history support the enhanced sentence. *See Hatchett v. State*, 740 N.E.2d 920. Therefore, counsel's error did not result in any harm to Reed.

We reiterate that to establish his claim of ineffective assistance of counsel, Reed is required to demonstrate prejudice. *French v. State*, 778 N.E.2d 816 (Ind.2002). "Prejudice" in this context must be established by showing there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Failure to satisfy this second element of the *Strickland* test will cause the claim to fail. *Id.* Reed has failed to prove by a preponderance of the evidence that, even absent the improper aggravator, his sentence would have been different. Thus, Reed's ineffective assistance claim in this respect fails. *Id.*

The remaining claims of ineffective assistance of trial and appellate counsel fail for the same reason. That is, we have determined the trial court was not prohibited from ordering the twenty-year sentence for the SVF conviction in the instant case to run consecutive to the sentence imposed for the other SVF conviction. Thus, the failure to object at trial or present the issue on appeal did not harm Reed. Having failed to establish prejudice, Reed's ineffective assistance claims in this respect fail. *Id.*

Judgment affirmed.

MATHIAS, J., concurs.

BARNES, J., concurs in result.