## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 17 2016, 6:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

John Pinnow
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Clyde L. Smith,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

March 17, 2016

Court of Appeals Case No.
71A05-1508-PC-1136

Appeal from the St. Joseph
Superior Court

The Honorable Jerome Frese,
Judge

Trial Court Cause No.
71D03-1206-PC-25

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Clyde L. Smith (Smith), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

## ISSUE

Smith raises one issue on appeal, which we restate as follows: Whether Smith's trial counsel provided ineffective assistance.

## FACTS AND PROCEDURAL HISTORY

Smith and his wife, Juanita Smith (Juanita), adopted and raised their biological granddaughters, A.S. (born in October of 1992) and C.S. (born in February of 1994), when the girls were respectively three and two years old. Smith frequently played games with A.S. and C.S. in the basement of their house. During these games, he would make the girls perform fellatio on him when he won. To avoid exposure, Smith used the word "chocolate" as the code name for wanting oral sex from the girls. (Appellant's App. p. 84). Smith would take them to the "boom boom" room in the basement and would turn the lights off during the act. (Appellant's App. p. 93). He would sometimes have one of the girls look out for their grandmother, while the other performed oral sex on him. Smith also attempted to penetrate A.S.'s vagina with his penis at least once; however, he stopped because it was painful for her. These abuses continued for more than two years until 2006.

[5] At some point, when A.S. was in middle school, she told Juanita that Smith was molesting both girls. Juanita confronted Smith, and he admitted to the allegations. She, however, did not report the molestations and did not seek counseling for the girls. Instead, Juanita and the girls moved out of the house into her daughter's nearby apartment. Two or three months later, Juanita, A.S., and C.S., returned to the house with Smith.

[6] In September, 2011, several years after Juanita learned of the abuses, a teacher overheard C.S. talking with a classmate about the molestations. The teacher reported the incident, and Detective Dave Sult (Detective Sult) of the St. Joseph County Special Victims Unit initiated an investigation. After waiving his *Miranda* rights, Smith admitted to Detective Sult that he had molested the girls for several years.

[7] On October 5, 2011, the State filed an Information charging Smith with one Count of attempted child molesting and four Counts of child molesting, all Class A felonies. Smith's counsel negotiated a plea agreement that provided that Smith would plead guilty to three of the five Counts. The trial counsel also negotiated a maximum executed cap of sixty-five years. Smith waived his right to appeal the sentence as long as the court sentenced him within the parameters of the plea agreement. The trial court took the guilty plea under advisement and ordered the preparation of a pre-sentence investigation report.

[8] On January 24, 2012, Smith pled guilty to one Count of attempted child molesting and two Counts of child molesting, all Class A felonies. On

February 22, 2012, the trial court held Smith's sentencing hearing and sentenced him to an aggregate sentence of sixty-five years.

[9] After filing and amending his petition for post-conviction relief in 2012 and 2013, both *pro se* and with the help of public defenders, Smith filed his last amendment on February 12, 2015. On July 17, 2015, the post-conviction court held an evidentiary hearing and, on July 27, 2015, denied Smith's petition for relief.

[10] Smith now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[11] Smith argues that his trial counsel rendered ineffective assistance. It is generally accepted that the petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless

clearly erroneous, but we accord no deference to conclusions of law. *Id*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[12] To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984), *reh'g denied*), *reh'g denied, cert. denied*, 534 U.S. 830 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. Failure to satisfy either prong will cause the claim to fail. *Id*.

[13] Smith first claims that his trial counsel's performance was deficient because the trial counsel did not present mitigating evidence beyond Smith's lack of criminal history.

[14] To support his argument, Smith cites to *Wiggins v. Smith*, 539 U.S. 510 (2003). The *Wiggins* court held that trial counsel's failure to expand investigation of the defendant's dysfunctional background—severe physical and sexual abuses the defendant had suffered at the hands of his mother and while under the care of a

series of foster parents—beyond a presentence investigation report and social services records fell short of the prevailing professional standards. *Id.* at 534. Counsel's conduct was also unreasonable in light of the evidence trial counsel uncovered in the social services records—evidence that would have led a reasonably competent attorney to investigate further. *Id.*

[15] This court previously addressed the issue of trial counsel's failure to investigate and present to the court potentially mitigating circumstances in the context of a child molesting case in *McCarty v. State*, 802 N.E.2d 959 (Ind. Ct. App. 2004). The *McCarty* court similarly held that trial counsel's failure to investigate the defendant's background for sentencing purposes fell short of the prevailing professional standards. *Id.* at 964. Had trial counsel spent more time with the defendant in preparing for the guilty plea and sentencing hearings, he might well have observed manifestations of the defendant's mental retardation and sought more detailed information regarding his family history, sexual victimization as a teenager, and potential for successful rehabilitation. *Id.*

[16] Both the *Wiggins* and *McCarty* courts recognized that when a trial counsel identifies a red flag in the client's background, counsel should inquire deeper to avoid counsel's performance from falling short of the prevailing professional norms. However, the present case is different from both *Wiggins* and *McCarty* because we do not have such red flags here. The record does not reveal any manifestations of Smith's mental retardation, severe physical or sexual abuses in his formative years, or other extreme circumstances that could have put a reasonably competent attorney on guard and warranted a further investigation

into Smith's background. The only detail that the record reveals is that Smith was going through "a lot of things" due to the death of his mother. (Appellant's Ex. 2, p. 6). While tragic in its own way, the death of Smith's mother does not make his background or circumstances extreme. Other than that, Smith lived a normal life; he had a loving wife, a job, a house, and two beautiful adopted girls.

[17] Smith further asserts that his trial counsel should have contacted the victims and "[found] out their opinion on what the appropriate sentence [should be]." (Appellant's Br. p. 6). We disagree and note that a decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess. *Brown v. State,* 691 N.E.2d 438, 447 (Ind. 1998). As such, based on our review of the record, we conclude that trial counsel's performance did not fall below an objective standard of reasonableness based on the prevailing professional norms.

[18] Smith finally argues he was prejudiced because he would have received a lesser sentence if the two victims were allowed to testify at the sentencing hearing. We disagree because the post-conviction judge, who was the same judge that sentenced Smith, after hearing the testimonies of A.S. and C.S. at the post-conviction hearing, clearly stated that their testimonies would not have produced a different result. *See Hinesley v. State*, 999 N.E.2d 975, 982 (Ind. Ct. App. 2013), *trans. denied* (a post-conviction court's findings and judgment should be entitled to greater than usual deference when the post-conviction judge is the same judge who conducted the original trial) (internal quotation

marks omitted). The post-conviction court added that the testimonies only demonstrated how deeply victimized the girls were; he would have discounted C.S.'s testimony "absolutely entirely" because C.S. felt that Smith should not go to jail at all. (Tr. p. 164). As such, we hold that there is no reasonable probability that the sentencing court would have imposed a lesser sentence under the circumstances.

## CONCLUSION

[19] Based on the foregoing, we hold the post-conviction court properly denied Smith's petition for post-conviction relief.

[20] Affirmed.

[21] Najam, J. and May, J. concur