## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2018, 8:13 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Desmon Catlett
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Desmon Catlett,

*Appellant-Petitioner,*

*v.*

State of Indiana,

*Appellee-Respondent.*

December 20, 2018

Court of Appeals Case No.
82A04-1710-PC-2460

Appeal from the Vanderburgh
Superior Court

The Hon. Robert J. Pigman,
Judge

Trial Court Cause No.
82D03-1208-PC-22

**Bradford, Judge.**

# Case Summary

[1] In 2006, Desmon Catlett was convicted of Class A felony voluntary manslaughter and Class B felony unlawful possession of a firearm by a serious violent felon ("SVF") and sentenced to forty-five years of incarceration. In 2012, Catlett petitioned for post-conviction relief ("PCR"), claiming that his trial counsel had been ineffective for allegedly failing to inform him of plea offers the State made before his trial. The post-conviction court ordered that the case be tried upon affidavits and denied Catlett's PCR petition in full. Catlett contends that the post-conviction court abused its discretion in failing to hold an evidentiary hearing and erred in concluding that he had not received ineffective assistance of trial counsel ("IAC"). Because we disagree, we affirm.

# Facts and Procedural History

[2] The underlying facts of this post-conviction proceeding were related by this court on direct appeal:

> In January of 2005, Catlett began dating Regina Hardiman. Hardiman had two sons: 14 year-old Te.J., and 12 year-old Tr.S. In early March of 2005, Catlett and Hardiman ended their dating relationship, and Hardiman began dating Tommy Jones, who was Te.J.'s father. On April 2, 2005, Jones drove Te.J. and Tr.S. from Hardiman's house to baseball practice. Later that afternoon, Jones returned—with his 13 year-old daughter D.S. in the car—to pick up the boys. On the way to Hardiman's house, Jones saw Catlett in a vehicle; he honked at the vehicle, then turned around and followed it into the parking lot of an apartment complex. It was approximately 5:00 p.m.

Jones parked next to the vehicle, exited his own, and approached the passenger side of the other vehicle—where Catlett was sitting. According to D.S., Jones and Catlett "had words" and it "sounded like [Jones] was angry." Catlett extended his hand, but Jones refused to shake it. Jones struck Catlett and then tried to pull him out of the car. Te.J. went over and "tried to stop" Jones. Te.J. saw that Catlett had a gun and then heard a gunshot. Jones ran around the back of the vehicles, yelling to Te.J., Tr.S., and D.S. "to get down." Catlett ran after him, firing a second shot. Jones ran between two apartment buildings. Catlett followed, firing a third shot. The children heard the shots and saw Jones fall to the ground. Catlett walked back toward them. D.S. asked if her father was dead, and Catlett "said, I don't know." Catlett walked toward Te.J. and Tr.S. "waving the gun" around, and then ran away.

An apartment resident called 9-1-1; both police and fire department personnel were on the scene within minutes. A fire department paramedic attempted to treat Jones, despite being unable to detect any pulse or respiration by Jones.

On April 4, 2005, the State filed an information charging Catlett with murder and [SVF], a class B felony. Catlett was tried by jury on April 24–26, 2006. Te.J., Tr.S., and D.S. testified to the above facts, and apartment residents testified to having seen Jones running from Catlett. […] Forensic pathologist Mark LeVaughn testified that Jones died of multiple gunshot wounds, with the "fatal wound being a close range wound to the back of the head."

*Catlett v. State*, No. 82A01-0607-CR-313, slip op. at 2–4 (Ind. Ct. App. March 13, 2007).

[3]     In April of 2005, the State charged Catlett with murder and Class B felony SVF, and attorney A. Kissinger was appointed to represent him. On August 19, 2005, the State sent a letter to Kissinger in which it made a plea offer which

would have required Catlett to (1) plead guilty to murder and SVF and (2) help the police find the gun that was used to commit the murder in exchange for an agreement that the sentences would run concurrently but be otherwise at the discretion of the trial court. The chronological case summary indicates that Kissinger last appeared in court on behalf of Catlett on October 5, 2005, and, on November 29, it was noted that Kissinger had passed away. On December 5, 2005, attorney D. Brinkmeyer entered his appearance for Catlett. On April 26, 2006, Catlett was convicted of Class A felony voluntary manslaughter and Class B felony SVF. The trial court imposed an aggregate forty-five-year sentence.

[4] In August of 2012, Catlett filed a PCR petition, raising several claims of IAC and freestanding error. On January 26, 2015, the State Public Defender withdrew from representation. On January 27, 2017, the post-conviction court ordered the parties to submit the case by affidavit. On April 3, 2017, Catlett filed his affidavit, which contained no averments tending to support his claims but in which he argued that an evidentiary hearing was necessary for him to establish his claims.

[5] The same day, Catlett filed an amended PCR petition in which he added a claim of IAC for allegedly failing to communicate plea offers. Catlett also filed a motion for discovery from the State requesting information on any plea offers that were made and filed requests for subpoenas for his trial counsel (requesting his client file), appellate counsel (to testify about the post-conviction claims),

and his former post-conviction counsel (to testify about any plea offers found in the record).

[6] Catlett's trial counsel filed a response stating that he never had access to the predecessor counsel's file and that his own files were destroyed after ten years in accordance with policy when no request had been made for them, so he no longer had a file for Catlett. In June of 2017, Catlett moved to compel responses to requests for admissions/interrogatories, which the post-conviction court denied as moot because they had already been granted. In August of 2017, Catlett again requested an evidentiary hearing, which request the post-conviction court denied.

[7] On September 29, 2017, the post-conviction court denied Catlett's PCR petition in full. With respect to the allegation that trial counsel failed to communicate plea offers, the post-conviction court found that Catlett had failed to:

> identify the omitted offers or provide any evidence of the nature of the offers or the likelihood and reasons [Catlett] would have accepted a plea offer rather than proceeding to a trial by jury. The Court is under no obligation to believe [Catlett]'s unsupported allegation that plea offers [Catlett] would have accepted were not communicated to him. Therefore, [Catlett] has not sufficiently established this claim by a preponderance of the evidence.

App. Vol. II p. 162.

# Discussion and Decision

[8]     Our standard for reviewing the denial of a PCR petition is well-settled:

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment.  The post-conviction court is the sole judge of the evidence and the credibility of the witnesses.  To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court. […] Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468, 469 (Ind. 2006) (internal citations and quotations omitted).

# I.  Denial of Evidentiary Hearing

[9]     Pursuant to Post-Conviction Rule 1(9)(b),

> [i]n the event petitioner elects to proceed pro se, the court at its discretion may order the cause submitted upon affidavit.  It need not order the personal presence of the petitioner unless his presence is required for a full and fair determination of the issues raised at an evidentiary hearing.

Affidavits constitute sworn testimony and are competent evidence in post-conviction proceedings.  *Smith v. State*, 822 N.E.2d 193, 201 (Ind. Ct. App. 2005), *trans. denied*.  "[I]f the PCR court orders the cause submitted by affidavit under Rule 1(9)(b), it is the court's prerogative to determine whether an

evidentiary hearing is required, along with the petitioner's personal presence, to achieve a 'full and fair determination of the issues raised.'" *Id*. Thus, the decision whether to hold a hearing, like the decision to order the cause submitted by affidavit, is "best left to the PCR court's discretion." *Id*. "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *McElfresh v. State*, 51 N.E.3d 103, 107 (Ind. 2016) (internal quotations and citations omitted).

[10] Catlett has failed to show that the post-conviction court abused its discretion in ordering the case to be submitted upon affidavit. Catlett's sole substantive claim is that he received IAC when his trial counsel allegedly failed to inform him of plea offers. Catlett, however, points to nothing in the record supporting his contention that an evidentiary hearing was required to fully and fairly evaluate this claim. Catlett's general assertion that he required an evidentiary hearing is simply not enough. Catlett has failed to establish that the post-conviction court abused its discretion in ordering the cause be submitted upon affidavit.

[11] Catlett mentions the post-conviction court's denial of his redundant request for admissions and to answer interrogatories and seems to argue that he was thereby denied the right to present evidence on his behalf, an alleged wrong that an evidentiary hearing presumably would have somehow righted. For several reasons, the denial of Catlett's request did not prejudice him in any way. First, the request was only denied as moot because a previous one had already been

granted. Second, Brinkmeyer, in fact, responded to the first request. Third, there is no reason to believe that calling Brinkmeyer to the stand at an evidentiary hearing would have helped, as Brinkmeyer no longer had his file for Catlett and had never had access to Kissinger's notes or records. The trial court's denial of Catlett's request for admissions and to answer interrogatories did not give rise to the need for an evidentiary hearing.

[12] Catlett also suggests that the trial court clerk improperly recorded filings to the wrong chronological case summary and that "either the clerk or the court had that file destroyed, shortly after Catlett filed his notice of appeal." Appellant's Br. p. 7. Catlett, however, does not identify the filings to which he is referring or the file that was allegedly improperly destroyed. Catlett's unsubstantiated insinuations of misconduct do not support a conclusion that an evidentiary hearing was required in this case.

# II. IAC

[13] We review claims of IAC based upon the principles enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> Under [*Strickland*], a claim of [IAC] requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on prevailing professional norms; and (2) counsel's performance prejudiced the defendant so much that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687, 694, 104 S. Ct. 2052; *Lowery v. State*, 640 N.E.2d 1031, 1041 (Ind. 1994). […] Failure

to satisfy either prong will cause the claim to fail. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

*French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

[14] As mentioned, Catlett claims that Brinkmeyer was ineffective for allegedly failing to communicate plea offers to him. There is, however, absolutely no support in the record for this claim, as the affidavit filed by Catlett did not contain any factual assertions supporting it. Specifically, the affidavit did not contain assertions that Brinkmeyer did not tell him about the August 19, 2005, plea offer or that Catlett would have accepted the offer if Brinkmeyer had told him about it.[1] There is no evidence to support a claim of deficient performance.

[15] Moreover, even if we assume that Catlett was not informed of the offer but would have accepted it had he known of its existence, he does not even claim, much less establish, that he suffered any prejudice. In any event, we do not believe that it would be possible to make such a showing in this case. The minimum sentence for murder in 2005 was (as it is today) forty-five years of incarceration, the same length as the aggregate sentence the trial court imposed after Catlett's trial, so there is no possibility that accepting the State's offer would have resulted in a shorter sentence. We do not see a way that Catlett

---

[1] Catlett also does not claim that Kissinger failed to tell him about the plea offer, even though Kissinger was his trial counsel at the time and represented him for at least several weeks after the offer was made before Brinkmeyer took over the case.

could have been prejudiced under the circumstances. Catlett has failed to establish IAC.

[16] The judgment of the post-conviction court is affirmed.

Bailey, J., and Brown, J., concur.