**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**MARIO JOVEN**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

SHARIF FIELDS,                                )
                                              )
    Appellant-Defendant,          )
                                              )
      vs.                      )    No. 49A04-1205-PC-249
                                              )
STATE OF INDIANA,                             )
                                              )
    Appellee-Plaintiff.           )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kimberly J. Brown, Judge
Cause No. 49G16-0408-PC-146690

**December 26, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Sharif Fields appeals the post-conviction court's denial of his petition for post-conviction relief. Fields raises two issues which we revise and restate as:

I.      Whether the post-conviction court erred in denying Fields's petition for relief based upon his argument that the State improperly suppressed evidence; and

II.     Whether Fields was denied the effective assistance of trial counsel.

We affirm.

The relevant facts as discussed in Fields's direct appeal follow:

On August 4, 2004, Fields knocked on the door of the residence of his ex-wife, Tawanda James ("James").[1] When James opened the door, Fields pulled James out of the house by her hair. Fields then pulled James around the corner to the area where he had parked his car. James eventually talked Fields into allowing her to return to the house. Still pulling James by her hair, Fields took James into her bedroom and demanded that James have sex with him. James told Fields that her mother was returning to the house soon, and Fields left the house, only to return shortly thereafter. When he returned to James' house, Fields pulled James to the ground and tried to remove her clothing. He then bit James on her arm hard enough to cause bleeding and bruising. Fields finally left after James promised she would call him.

Fields v. State, No. 49A04-0501-CR-16, slip op. at 2 (Ind. Ct. App. September 7, 2005) (citations omitted).

On August 13, 2004, the State charged Fields with criminal confinement as a class D felony, domestic battery as a class A misdemeanor, battery as a class A misdemeanor, and invasion of privacy as a class A misdemeanor. Id. at 2-3. On November 16, 2004, the court held a bench trial, and James testified to the foregoing facts. Fields testified that he was at work on August 4, 2004, and then went to a hotel with Kamika Garcia and

---

[1] Both Fields and James had restraining orders against each other.

stayed at the hotel all night. Fields also testified that he had told James that he could not "get in any kind of trouble" because he was on probation, and that he did not touch James. Trial Transcript at 17. During closing argument, Fields's counsel pointed out that James had a conviction for forgery as a class C felony and a gun charge in her past and that no pictures of the injury allegedly taken by the State were introduced at trial.

Pursuant to Fields's motion, the trial court dismissed the domestic battery and invasion of privacy charges, but found Fields guilty of criminal confinement as a class D felony and battery as a class A misdemeanor. Fields, slip op. at 3. The court sentenced Fields to one-and-one-half years for the confinement conviction and to time served for the battery conviction. Id. On direct appeal, Fields argued that the evidence was insufficient to support his convictions and that his convictions for both confinement and battery violated the Double Jeopardy Clause of the Indiana Constitution. This court affirmed his convictions. Id. at 2, 4-6.

On December 9, 2008, Fields filed a *pro se* petition for post-conviction relief which alleged ineffective assistance of trial counsel, that there was evidence that was not previously presented which required vacation of his convictions, and that the State failed to preserve evidence that was useful or exculpatory. On August 20, 2010, Fields by counsel filed an amendment to his petition for post-conviction relief.

On October 19, 2010, the court held a hearing on the petition. At the beginning of the hearing, the State asked for a clarification of Fields's claims and whether he was bringing allegations "under the new evidence rule." Post-Conviction Transcript at 6. Fields's post-conviction counsel stated: "Judge, this is a Brady claim. The evidence isn't

3

new in any way. The evidence was available to the State, and the State didn't disclose it." Id.

Fields introduced four police reports which the court admitted. Specifically, a police report dated July 11, 2004, indicated that the complainant, Kamika Garcia, had been having an ongoing relationship with Fields and that Garcia had received a threatening phone call from James on July 11, 2004.[2] A second police report dated July 30, 2004, indicated that Garcia reported receiving harassing telephone calls from James. A third police report dated August 5, 2004, indicated that the police were dispatched to a disturbance that day, and the narrative of the report states in part:

> [James] stated that she tried to confide in her mother that her boyfriend, Sharif Fields, whom she has a protective order against, came over the night before with a gun, dragged her out of the house and chased her around the park. Miss James stated she would not call the police because Mr. Fields has a back-up of 30 years for crimes, which she did not specify. At which point Miss Taylor became upset with her daughter Miss James, yelling that she should call the police and a fight ensued. Mr. Taylor stated he was there and saw Miss Taylor and Miss James fighting with each other, pulling each other's hair, biting each other, and pushing and shoving. Mr. Taylor states this is a regular occurrence that goes on almost weekly. . . . I was advised by Miss James who showed me what could have been a bite mark on her left arm, and stated her mother had done it. At which point I was going to arrest the mother, Elizabeth Taylor for battery with injury. Miss James stated "How can you prove that she did it?" I told Miss James I would take her word for it. Miss James said, "Well, you can't because I'm not telling the truth." At which point I was not sure what to believe what was going on. I stated to Miss James that I would make a report and that she could go down to the prosecutor's office to seek a warrant for Mr. Fields for violating the protective order, if he did in fact come over the previous night, to which she started to recant her story and if she decided to press charges on her mother, Miss Taylor. I also advised her that her mother could press charges on her. Neither wanted to press charges on the other.

---

[2] The report and the post-conviction transcript spell Tawanda's name as Tajuanda.

4

Petitioner's Exhibit 3.

A fourth police report dated August 6, 2004, related to the incident on August 4, 2004, between James and Fields. The report indicated that James had alleged that Fields stated that he would bite off her jaw and bite her left arm right at her underarm. The report also stated: "Pictures were taken by the prosecutor's office and [James] stated that she is willing to prosecute." Petitioner's Exhibit 4. Affidavits from the officers that made the reports indicated that they had no independent recollection of the events in the reports.

Fields introduced the testimony of Lashaunda McClain, the mother of Fields's son. McClain testified that James called her and stated: "[I]f you get involved, I will send him back to jail." Post-Conviction Transcript at 82.

Scott Munroe, Fields's former employer, described the relationship between Fields and James as tense and described an incident in which Fields and James argued on Munroe's front lawn. The State objected, and the court stated "[i]nasmuch as your questioning is an attempt to discredit or to prove motive by Ms. Fields for bringing the charges that ultimately resulted in Mr. Fields's conviction, the motion, the objection is sustained." Id. at 73-74. During an offer of proof, Munroe testified that James followed him and Fields for a few miles and that Fields and Munroe called the police.

Fields also introduced and the court admitted into evidence the charging information against James alleging that she committed invasion of privacy as a class A misdemeanor by entering Fields's residence uninvited on May 21, 2004, and committed

5

intimidation against Fields as a class D felony that same day by telling him: "I'm going to kill you[;] I'm going to blow your head off."[3] Petitioner's Exhibit 17.

Fields's trial counsel testified that he did not remember the case and that he looked at the file in the public defender's office and still did not remember the case. Fields's trial counsel also stated that generally he "[v]ery possibly" would have reviewed police reports for the case and that he would have investigated the victim "[a]s much as possible." Post-Conviction Transcript at 55. When asked whether he would use the fact that a victim in this type of case chased around the defendant and his employer and cursed at them to challenge the victim's credibility, trial counsel stated that he could not say without knowing more but that it would merit investigation. When questioned about a defendant facing twenty-four years in another court for a probation violation and whether a victim's threat to "put the defendant away if he ever left her by alleging something like a criminal confinement against him" would affect her credibility, Fields's trial counsel answered: "I would have to know more. That's a fairly specific hypothetical." Id. at 57. Fields's trial counsel also indicated that he reviewed the file, that he did not see any indication that Fields informed him about a possible alibi, and that

---

[3] Fields argues that he "testified at trial that the case against James was dropped because he refused to testify against her." Appellant's Brief at 17. The page cited by Fields reveals that he was being questioned during cross-examination regarding phone records and stated:

> If they get . . . if they call up the records they will see that on her case her mom and them . . . because we had another case going on which that dropped because I tried not to testified [sic] against her, the, they took the . . . she . . . they changed their number. And when they changed their number she didn't have . . . they didn't have the same phone number because they said I was trying to call her.

Trial Transcript at 19.

6

it was his general practice to "certainly note" an alibi defense if there was a possibility of such a defense. Id. at 59.

On April 23, 2012, the court denied Fields's petition for post-conviction relief in a thirteen-page order. Specifically, the court concluded that Fields's trial counsel could have found the August 5th report by the exercise of reasonable diligence. The court also rejected Fields's claims of ineffective assistance of trial counsel.

Before discussing Fields's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). Id. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Id. In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

7

I.

The first issue is whether the post-conviction court erred in denying Fields's petition for relief based upon his argument that the State improperly suppressed evidence. Fields argues that the availability of information is measured in terms of whether the information was in the possession of some arm of the State and that police reports are the work product of the prosecuting attorney. Fields also contends that the State could have easily checked on its sole witness's background to find this exculpatory and impeaching material, which he would have used to impeach James.

The State argues that Fields waived this claim because he did not raise a Brady violation on direct appeal. The State points out that Fields emphasized at the post-conviction hearing that his claim was a Brady claim and not a claim of newly discovered evidence. The State contends that James's testimony that she had reported the injuries and the State had even taken pictures of the bite mark defeats any argument that the evidence was demonstrably unavailable so as to prevent a Brady claim on direct appeal. The State argues that the prosecution did not suppress the evidence because it was not in the State's possession in this case and points out that Fields cites to no authority that the State must search all of its criminal cases for evidence favorable to one defendant. The State also argues that the August 5th report was not favorable to Fields because it revealed that James did not want to report Fields's attack to police because she knew that her report may cause him to be incarcerated for thirty years.

In his reply brief, Fields argues that the State's position that his argument is waived is incorrect because he did not know about the August 5th police report until his

8

post-conviction counsel discovered it, and he could not have raised the Brady violation claim on direct appeal because there was no evidence in the record that supported such a claim. Fields also contends that he is not arguing that the State must search all of its criminal cases for favorable evidence particular to one defendant, but does argue that the State should have investigated its sole complaining witness for impeaching or exculpatory evidence. Fields also argues that James's testimony was the only evidence against Fields and that any evidence bearing on her credibility was critical to the outcome of the bench trial.

With respect to the police report, the post-conviction court found in part:

The United States Supreme Court summarizes the three components of a *Brady* violation thusly: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L.Ed.2d 286 (1999).

[Fields] has offered no evidence that the State willfully suppressed the existence of the August 5 report. There is no indication that Officer Smith was aware of James' contact with three other IPD officers the day before she spoke to James on August 6. Nor is there any indication that Deputy Prosecutor Georgeanna Orlich, representing the State at trial, knew of the report's existence. The question now is whether the State *inadvertently* suppressed the report.

[Fields], in his argument, cites to *Prewitt v. State*, 819 N.E.2d 393, (Ind. Ct. App. [2004]), [trans. denied,] which has this to say about "suppression":

Evidence cannot be regarded as "suppressed" and the State will not be found to have suppressed material information when the defendant has access to the evidence before trial by the exercise of reasonable diligence. *Id.*, at 402 (internal citation omitted).

9

The August 5 police report was found by [Fields's post-conviction] counsel through the exercise of reasonable diligence. The Court thus infers that *trial counsel* could also have found the report by the exercise of reasonable diligence. The Court now finds that the second prong of a *Strickler* test for a *Brady* violation has not been met, and there was no *Brady* violation regarding the report.

Appellant's Appendix at 133-134.

In Brady v. Maryland, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-1197 (1963). "To prevail on a Brady claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." Minnick v. State, 698 N.E.2d 745, 755 (Ind. 1998) (citing Brady, 373 U.S. at 87, 83 S. Ct. 1194), reh'g denied, cert. denied, 528 U.S. 1006, 120 S. Ct. 501 (1999). A defendant must show that the State suppressed the evidence either willfully or inadvertently and that prejudice ensued. Skinner v. Switzer, 131 S. Ct. 1289, 1300 (2011). The State will not be found to have suppressed material information if that information was available to a defendant through the exercise of reasonable diligence. Conner v. State, 711 N.E.2d 1238, 1246 (Ind. 1999), reh'g denied, cert. denied, 531 U.S. 829, 121 S. Ct. 81 (2000).

"Evidence is 'material' only if there is a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Minnick, 698 N.E.2d at 755 (quoting United States v. Bagley, 473 U.S. 667, 685, 105 S. Ct. 3375, 3385 (1985)). A reasonable probability is a probability sufficient to

10

undermine confidence in the outcome. Bagley, 473 U.S. at 682, 105 S. Ct. at 3383. "Favorable evidence" includes both exculpatory evidence and impeachment evidence. See Skinner, 131 S. Ct. at 1300; Prewitt v. State, 819 N.E.2d 393, 401 (Ind. Ct. App. 2004), trans. denied.

Fields's post-conviction counsel did not ask Fields's trial counsel whether he had discovered the August 5th police report prior to trial or whether he had a strategic reason for not introducing the report. Further, the police report dated August 5, 2004, was a public record and available to Fields and his trial counsel through the exercise of reasonable diligence. See Ind. Code § 5-14-3-5(c) (2004) (subsequently amended by Pub. L. No. 1-2012, § 1, eff. January 30, 2012). Also, we cannot say that Fields established that the evidence was favorable to the defense as it made reference to allegations that Fields previously went to James's house with a gun in violation of a protective order, dragged her outside, and chased her around the park. Based upon our review of the record, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. See Stephenson v. State, 864 N.E.2d 1022, 1057 (Ind. 2007) (rejecting the petitioner's Brady claim and holding that the petitioner made no showing that the tape was not available to the defense in the exercise of reasonable diligence), reh'g denied, cert. denied, 552 U.S. 1314, 128 S. Ct. 1871 (2008).

II.

The next issue is whether Fields was denied the effective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must

11

demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), reh'g denied), reh'g denied, cert. denied, 534 U.S. 830, 122 S. Ct. 73 (2001). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Perez v. State, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. French, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Morgan v. State, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." Williams v. State, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. Clark v. State, 668 N.E.2d 1206, 1211 (Ind. 1996), reh'g denied, cert. denied, 520 U.S.

12

1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." Burr v. State, 492 N.E.2d 306, 309 (Ind. 1986).

Fields argues that he received ineffective assistance of trial counsel because his counsel failed to investigate and present impeaching and exculpatory evidence. Specifically, Fields argues that his trial counsel did no investigation that would have led to McClain, who would have testified that James threatened her by stating that if McClain became involved that James would send Fields back to jail. Fields also argues that his trial counsel did not investigate Fields's alibi, did not question Fields's employer, and presented no evidence at trial. Fields also contends that his trial counsel was ineffective for failing to discover the August 5th police report related to the dispute between James and her mother. Fields asserts that his trial counsel could have found the charges against James and presented them at trial. Fields also contends that his trial counsel should have investigated and presented Garcia's testimony and used it to cross-examine James and provide an alibi.

With respect to McClain, the State argues that the decision regarding what witnesses to call is a matter of trial strategy, there was no showing that Fields informed his trial counsel of McClain's statement, and Fields did not demonstrate prejudice. The State argues that the August 5th police report "would have buttressed James's report of Fields's attack and placed Fields in an even more negative light." Appellee's Brief at 11. The State also contends that the report by Fields of a prior attack by James or the report

13

by McClain would not properly have been admitted because it would have been impermissible character evidence under Ind. Evidence Rule 405.[4]

In his reply brief, Fields argues that the evidence that James was vindictive was not offered to show her character under Ind. Evidence Rule 405, but was offered specifically under Ind. Evidence Rule 404(b).[5] Fields argues that James had a motive, intent, and a plan to lie in order to send Fields back to jail if he left her.

The post-conviction court found:

> In his Amended Petition, [Fields] alleges that [his trial counsel] did not discuss with [him], or use at trial, the August 5 police report concerning an altercation between James and her mother, or evidence of harassing behavior committed by James against other persons before the August 4 battery.

> At the post-conviction relief hearings, [Fields] attempted to introduce into evidence several allegations of harassing conduct by James,

---

[4] Ind. Evidence Rule 405 governs methods of proving character and provides:

(a)    Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct. Upon reasonable pre-trial notice by the accused of the intention to offer character evidence, the prosecution in a criminal case shall provide the accused with any relevant specific instances of conduct to be used in cross-examination.

(b)    Specific Instances of Conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of that person's conduct.

[5] Ind. Evidence Rule 404(b) provides:

Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

almost all of which would have been inadmissible at trial under Indiana Rule 608.[6]

\* \* \* \* \*

[Fields] argues that trial counsel should have introduced into evidence copies of documents concerning [Fields's] dissolution of marriage from James, a copy of a no-contact order between James and a person named Tawana Fields (who apparently has no connection with this case) and testimony from [Fields's] employer, Scott Monroe, who was not a witness to the battery in this case, or a witness to the altercation between James and her mother on August 5, or a witness to any admissible statements made by James regarding this case. The Court finds that the only evidence of prior conduct on the part of James that *might* have been admissible at trial (under Rule 613)[7] was a single statement made by

---

[6] Ind. Evidence Rule 608 governs evidence of character and conduct of witnesses and provides:

(a)     Opinion and Reputation Evidence of Character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b)     Specific Instances of the Conduct of a Witness. For the purpose of attacking or supporting the witness's credibility, other than conviction of a crime as provided in Rule 609, specific instances may not be inquired into or proven by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

[7] Ind. Evidence Rule 613 governs prior statements of witnesses and provides:

(a)     Examining Witness Concerning Prior Statement. In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

(b)     Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to statements of a party-opponent as defined in Rule 801(d)(2).

15

James to a woman named [] McClain, who, at the time of the battery, was the mother of a child fathered by [Fields].

### a.      James' statement to McClain

At the March 15, 2011 post-conviction relief hearing, McClain testified that James had said to her: "If you get involved, I will send [Fields] back to jail." Ms. McClain said she thought James made the statement before James reported the August 4th battery, but McClain could not say exactly when the statement was made.[8]

It is not clear to the Court what James meant by the statement, assuming that it was, in fact, made. It could be interpreted as meaning (1) James would make a false accusation against [Fields] if McClain continued her interference in James' affairs, or (2) James was thinking of not reporting something that actually did happen but she would change her mind if McClain continued to interfere, or (3) it might have had nothing whatsoever to do with the events of August 4.

A portion of the August 5 police report appears to support the second interpretation. In it, James tells the reporting officer:

> Her boyfriend, Sharif Fields, whom she has a protective order against, came over the night before with a gun, dragged her out of the house and chased her around the park. **Miss James stated she would not call the police because Mr. Fields has a back-up of 30 years for crimes.**
> *Petitioner's Exhibit 3 (boldface added)*

James did not testify at either of the post-conviction relief hearings and so the Court has not had the opportunity of seeing and hearing her response to McClain's testimony. James would have been allowed to do so at trial, and the Court cannot guess what her response would have been, or what explanation she might have given for making the statement to McClain, or even whether James would have admitted to making the statement at all.

[Fields] has not shown that he made his trial counsel . . . aware of the statement made by James to McClain prior to trial. It appears that McClain did not approach [trial counsel] prior to trial. The Court finds that

---

[8] McClain was not a witness to the battery.

16

[trial counsel] was not ineffective for his failure to call McClain to testify at trial.

As to whether [Fields] was prejudiced by McClain's absence from trial, the Court finds it is unable to determine that without first seeing and hearing James impeached with her statement.

Appellant's Appendix at 137-140.

With respect to the August 5th police report and Fields's allegation of ineffective assistance, the post-conviction court found:

[Fields's post-conviction counsel] found the August 5 police report concerning James and her mother through the exercise of reasonable diligence. It follows that [Fields's trial counsel] could have done the same. The Court agrees that this was an admissible piece of impeachment evidence that might have been helpful to the defense. The question before the Court now is whether this isolated mistake rises to the level of ineffective assistance of counsel under a *Strickland* analysis.

[Fields] did not call James to testify at either of the post-conviction relief hearings. The August 5 report implies that James blamed two different people for the bite mark on her arm, but at the same time confirms the commission of a crime committed against her by [Fields] the day before. While the report could have been used to impeach James' credibility, it does not, on its face, clearly and unambiguously exonerate [Fields].

Because the Court cannot guess as to how James would have responded on the witness stand when the defense attempted to impeach her with the report, the Court is unable to conclude that the use of the report would have affected the outcome of the trial.

The Court finds that [Fields] has not met his burden of proof regarding prejudice in the matter of the August 5 police report. The Court need not consider whether [Fields's trial counsel's] failure to find the report prior to trial made him ineffective in his representation under a *Strickland*-type review.

Id. at 140-141.

17

To the extent that Fields suggests that his trial counsel was ineffective for failing to present evidence of the nature of the relationship between Fields and James, we observe that such evidence was already before the trier of fact. James's testimony at trial revealed that Fields and James were divorced by August 4, 2004, and both had a restraining order against the other person on that date. Fields's trial counsel asked Fields at trial about his "pretty rocky divorce," and Fields testified that James was "just too physical" and that he "had to call the police all the time." Trial Transcript at 17. We also observe that Fields's trial counsel attacked James's credibility by pointing out that she had a conviction for forgery as a class C felony and a gun charge in her past.

With respect to James's previous allegation involving the bite, Fields's post-conviction counsel posed a hypothetical question to Fields's trial counsel. Specifically, the following exchange occurred during the direct examination of Fields's trial counsel:

Q    [I]f you were involved in a case where a victim was alleging that a defendant had bit her, but the day before had alleged that her mother had bit her, would that, would that – would you question the credibility using that information at all? If she had alleged the defendant had bit her, but the day before to a police in a police report she had alleged that actually her mother had bit her, would you use that fact to try to either impeach her or to show her bias, or show that she was incredible?

A    If I had that information, yes I would.

Post-Conviction Transcript at 56. However, with respect to the August 5th police report, we observe that Fields's post-conviction counsel did not ask Fields's trial counsel whether he had reviewed the report or whether he had a strategic reason for not introducing the report. The August 5th police report included certain statements which may have been damaging to Fields's defense. Specifically, the report indicated that

18

James informed the police officer that she tried to confide in her mother that Fields came over the night before with a gun in violation of a protective order, dragged her out of the house, and chased her around the park. The report also indicated that James and her mother fought over whether James should report Fields's actions to the police.

With respect to Fields's argument that his trial counsel failed to investigate his alibi, we observe that trial counsel indicated that it was his general practice to certainly note an alibi defense if it appeared there was such a defense and that his review of the file did not reveal any indication that Fields informed him about a possible alibi. The record also reveals that Fields's trial counsel raised the idea of an alibi defense when he questioned Fields during direct examination at trial and Fields testified that he went to a hotel with Garcia. During cross-examination, Fields testified that Garcia was not present at trial and that she was afraid of James.

Under the circumstances, we cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. See Morlan v. State, 491 N.E.2d 1001, 1003 (Ind. 1986) (holding that while trial counsel could have impeached the credibility of certain witnesses by exposing a long-standing conflict between the petitioner and the complaining witness, such testimony also would have established a possible motive for the shooting and concluding that trial counsel's strategy to not aggressively impeach the witnesses was not deficient).

For the foregoing reasons, we affirm the post-conviction court's denial of Fields's petition for post-conviction relief.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.