**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**TONY V. HAWKINS**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TONY V. HAWKINS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 56A05-1110-PC-524 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE NEWTON SUPERIOR COURT
The Honorable Daniel J. Molter, Judge
Cause No. 56D01-0211-FA-2

**February 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Tony V. Hawkins, *pro se*, appeals the post-conviction court's denial of his petition for post-conviction relief. Hawkins raises three issues which we revise and restate as:

I.      Whether the post-conviction court erred in denying Hawkins's petition for relief based upon his argument that the State improperly destroyed evidence; and

II.     Whether Hawkins was denied the effective assistance of trial counsel.

We affirm.

The relevant facts follow. In November 2002, the State charged Hawkins with dealing in cocaine as a class A felony and dealing in marijuana as a class D felony.[1] On November 22, 2002, Harry Falk entered an appearance on behalf of Hawkins. On December 4, 2002, Hawkins filed a motion to produce evidence. On December 9, 2002, the State filed a Notice of Production of Discovery Documents with Proof of Service.[2]

On December 31, 2002, the State filed a motion to amend the charging information alleging that Hawkins was an habitual offender. On October 1, 2004, the State and Hawkins entered into a plea agreement in which Hawkins pled guilty to dealing in cocaine as a class A felony. The court accepted the plea agreement and ordered the offense of dealing in marijuana and the habitual offender enhancement dismissed. The court sentenced Hawkins to thirty years in the Department of Correction.

On February 14, 2005, Hawkins filed a petition for post-conviction relief. On March 9, 2005, Kelly A. Kelly entered an appearance on behalf of Hawkins. On April 4,

---

[1] The record does not contain the charging information.

[2] The record does not contain a copy of the State's Notice.

2

2006, the State moved to destroy evidence, and the court granted the motion. On December 13, 2007, Kelly filed a withdrawal of appearance which the court granted.

On March 13, 2008, Hawkins filed a motion to receive telephone records. A CCS entry dated March 13, 2008, states: "CTS Dockets [sic] does not contain records, therefore CT is unable to provide deft w/relief sought." Appellant's Appendix at 8.

On September 24, 2010, Hawkins filed a motion for production of documents requesting phone records, "TAPES that were recorded during the controlled buys," criminal records of the informants, surveillance tapes, lab records, the arrest record of his codefendant, and any agreement involving the prosecutor and the codefendant. Appellant's Appendix at 129. After a hearing, the court determined that Hawkins sought production of documents that had been destroyed pursuant to rules of retention and denied Hawkins's motion.

On February 25, 2011, Hawkins filed an amended petition for post-conviction relief. Hawkins argued that the State improperly withheld certain exculpatory evidence, that "IF not for trial counsel INEFFECTIVENESS [he] would never enter into plea – agreement with NEWTON COUNTY PROSECUTORS OFFICE," that his plea was "UNINTELLIGENTLY made under duress," and that the exhibits attached to his petition showed that had he "sought to put the states [sic] case to an adversarial testing petitioner would of [sic] faced a habitual offender enhancement." Id. at 105.

On August 31, 2011, the court held a hearing on Hawkins's petition. During the hearing, J. Edward Barce, the prosecuting attorney at the time charges were filed against Hawkins, testified that Hawkins "was eligible to be a habitual offender because of prior

3

felony convictions," but he did not remember any details about Hawkins's record. Transcript at 24. Barce also stated that there was no reason to believe that he strayed from procedure when he handled Hawkins's enhancement. With respect to the order to destroy evidence, Barce testified: "I've never seen an order to the effect that we wanted to destroy any paperwork or anything like that; it's to get rid of the drugs." Id. at 32.

Hawkins's trial counsel, Falk, testified that the State had Hawkins "cold" on the charge of dealing in cocaine as an A felony and the charge of being an habitual offender was not a consideration. Id. at 43. Falk also testified that there was a concern that informing the prosecutor of an erroneous habitual offender charge would result in further convictions being discovered by the prosecutor. During the direct examination of Falk by Hawkins, the court stated:

> Mr. Hawkins, I'm going to set this matter over to allow you an opportunity to prepare yourself on how to properly examine witnesses and such and such. The Court can take no more leeway with you at this point. You are just not following the rules of procedure. I have tried to help you in the interest of fairness, perhaps even rephrased your questions for you. Sometimes you are testifying, sometimes you're not. You are putting things in that are not in evidence, you are ignoring the answers of the witnesses and I do not believe under basic due process . . . .

Id. at 45. After some discussion, Hawkins stated, "Can we just end it here," and rested. Id. at 46.

On September 19, 2011, the court entered an order denying Hawkins's petition for post-conviction relief. Specifically, the order stated:

### FINDINGS OF FACT

\* \* \* \* \*

4

That during the hearings on [Hawkins's] Petition for Post-Conviction Relief, evidence was presented to the trial court that J. Edward Barce, who was the Newton County Prosecuting Attorney at the time the charges were filed in this matter, took reasonable steps to research the underlying charges that were used to support the habitual offender enhancement that was filed against [Hawkins] in this matter and to make sure that [Hawkins] was the individual charged in the underlying cases.

The State of Indiana, through the office of the Newton County Prosecuting Attorney never undertook any actions to mislead [Hawkins] or to create any type of false illusion in the mind of [Hawkins] when filing the charges or the habitual offender enhancement in this case.

That consistent with its longstanding practice, the State of Indiana through the office of the Newton County Prosecutor turned over all appropriate discovery material to [Hawkins].

That [Hawkins] alleged in his Petition for Post-Conviction Relief that his trial counsel's performance was deficient because of his handling of the habitual offender enhancement filed in this matter insofar as he failed to file a motion to dismiss, motion to suppress or any other pleading challenging the validity of the habitual offender enhancement.

[Hawkins] alleges that the State of Indiana through the Prosecuting Attorney sought and obtained from the Court, an order to destroy evidence used in the prosecution of [Hawkins] notwithstanding the likelihood that [Hawkins] might later seek post conviction relief for which such evidence could prove material. In fact, the State of Indiana sought permission only to destroy the actual illicit drugs and not evidence related to the commission of crimes or issues of predisposition to commit crimes. The State of Indiana argued laches applies because the passage of time and fading memories has resulted in the inability of various law enforcement officials to accurately recall specific events of otherwise routine drug transactions so long after the fact. The Court finds that laches should apply.

[Hawkins] alleged in his Petition for Post-Conviction Relief that trial counsel should have made him aware of the fact that he could not have been found to be a habitual offender based on the pleadings filed in this matter by the State of Indiana since one of [Hawkins's] convictions, as alleged by the State of Indiana to support the habitual offense enhancement was in error.

5

In fact, trial counsel did so advise [Hawkins] and discussed with him, the problems that the State of Indiana would have in trying to prove the allegations made in the habitual offender enhancement that was filed in this case.

That trial counsel informed [Hawkins] that it would not be in his best interest to bring to the Prosecutor's attention any error contained in the habitual offender enhancement since it was likely that the State of Indiana would simply correct the errors in the habitual offender enhancement and move to amend the habitual offender count to reflect true and accurate unrelated felony convictions.

**CONCLUSIONS OF LAW**

* * * * *

There is not sufficient evidence from which this Court can conclude that the State of Indiana, either willfully or inadvertently, suppressed any material evidence and therefore the Court finds that [Hawkins] has failed to show that there was any type of *Brady* violation.

* * * * *

There is not sufficient evidence from which this Court can conclude that the performance of trial counsel fell below the norms of prevailing professional conduct.

[Hawkins] was not denied effective assistance of counsel in this matter.

That based upon the findings of fact and conclusions of law set forth herein, the Petition for Post-Conviction Relief, as amended by [Hawkins] in this matter should be denied.

Appellant's Appendix at 134-137.

Before discussing Hawkins's allegations of error, we note that although Hawkins is proceeding *pro se*, such litigants are held to the same standard as trained counsel and are required to follow procedural rules. Evans v. State, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), trans. denied. We also note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a

6

post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Fisher, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. Further, the post-conviction court in this case entered findings of fact and conclusions thereon in accordance with Indiana Post-Conviction Rule 1(6). Id. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error – that which leaves us with a definite and firm conviction that a mistake has been made." Id. In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. Id.

## I.

The first issue is whether the post-conviction court erred in denying Hawkins's petition for relief based upon his argument that the State improperly destroyed evidence. Hawkins argues that "[t]his case depends on Laboratory Reports, Covert Audio and Video Recordings, Testimony of Confidential informants, Drug Task Force Agents and their documentations, along with telephone records showing amounts of calls made during investigation." Appellant's Brief at 7. Hawkins argues that "[w]hen the state destroyed or lost all of the documents pertaining to this cause, it left the petitioner without the proper documentation to support his issues filed in his" petition for post-

conviction relief. Id. at 7. Hawkins further argues that "[a]ny discarded or destroyed evidence is a violation of the Brady law." Id. at 10 (citing Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1983)). Hawkins alleges that "[t]hese documents were exculpatory in nature." Id. Hawkins also argues that "prosecutorial misconduct should be applied for the mishandling of such vital dockets, both for the state and the petitioner in this cause." Id. at 7. The State argues that the prosecutor complied with all discovery orders and that the record reveals that the motion to destroy evidence "would have only applied to the actual drugs themselves and not any peripheral paperwork." Appellee's Brief at 10.

In Brady v. Maryland, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution." 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-1197 (1963). "To prevail on a Brady claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial." Minnick v. State, 698 N.E.2d 745, 755 (Ind. 1998) (citing Brady, 373 U.S. at 87, 83 S. Ct. 1194), reh'g denied, cert. denied, 528 U.S. 1006, 120 S. Ct. 501 (1999). "Evidence is 'material' only if there is a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Id. (quoting United States v. Bagley, 473 U.S. 667, 685, 105 S. Ct. 3375, 3385 (1985)). A reasonable probability is a probability sufficient to undermine confidence in the outcome. Bagley, 473 U.S. at 682, 105 S. Ct. at 3383.

The Indiana Supreme Court has held that Brady does not apply when evidence is disclosed before trial. See Noojin v. State, 730 N.E.2d 672, 676 n.1 (Ind. 2000) (holding that Brady had no application where the content of the alleged exculpatory evidence was revealed through testimony at trial). Here, Hawkins filed a motion to produce evidence on December 4, 2002, which requested numerous items including a copy of all written and recorded statements of persons whom the prosecuting attorney intended to call as witnesses, written reports, lab reports, and physical evidence. On December 9, 2002, the State filed a Notice of Production of Discovery Documents with Proof of Service, and, as previously noted, the record does not contain a copy of the State's notice. Based upon the record, we cannot say that the State failed to provide Hawkins with the items he mentions in his petition for post-conviction relief. Even assuming that Brady applies in this context as to some of the items, we cannot say based upon the record that Hawkins established that the prosecution suppressed evidence, that the evidence was favorable to the defense, and that the evidence was material to an issue at trial.[3]

## II.

The next issue is whether Hawkins was denied the effective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984),

---

[3] Because we conclude that Hawkins has not established that the prosecution suppressed evidence, that the evidence was favorable to the defense, and that the evidence was material to an issue at trial, we need not address Hawkins's argument regarding laches.

9

reh'g denied), reh'g denied, cert. denied, 534 U.S. 830, 122 S. Ct. 73 (2001).  A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms.  French v. State, 778 N.E.2d 816, 824 (Ind. 2002).  To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Perez v. State, 748 N.E.2d 853, 854 (Ind. 2001).  Failure to satisfy either prong will cause the claim to fail.  French, 778 N.E.2d at 824.  Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone.  Id.

When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Morgan v. State, 755 N.E.2d 1070, 1072 (Ind. 2001).  "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption."  Williams v. State, 771 N.E.2d 70, 73 (Ind. 2002).  Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel.  Clark v. State, 668 N.E.2d 1206, 1211 (Ind. 1996), reh'g denied, cert. denied, 520 U.S. 1171, 117 S. Ct. 1438 (1997).  "Reasonable strategy is not subject to judicial second guesses."  Burr v. State, 492 N.E.2d 306, 309 (Ind. 1986).

Hawkins argues that his attorney's performance "fell below standards when he failed to put the states [sic] charge of Habitual Offender to a meaning to adversarial

10

testing." Appellant's Brief at 11. Hawkins argues that "Attorney Falk knew for some time that one of the underlying felonies used to file the habitual act on petitioners [sic] did not belong to the petitioner but did not challenge it . . . ." Id. Hawkins argues that "[h]ad the Habitual not been filed against the petitioner to motivate a 30 year plea, the out come [sic] of the case could have been different." Id. at 12. Hawkins argues that "[t]he State by using case **#95-CR-5501-01** clearly made an error" as that cause number "belongs to a black male born in 1974, petitioner is Caucasian and born in 1959." Id. Hawkins argues that his attorney "knew of this error and let the state move forward with this error in filing of the habitual offender." Id.

The State argues that Hawkins cannot show a reasonable probability that the outcome would have been different had he gone to trial and challenged the habitual offender charge along with the A felony. The State also argues that there was "no reason to bring to the State's attention the fact that it could not eventually prove the habitual offender enhancement." Appellee's Brief at 13.

Because Hawkins was convicted pursuant to a guilty plea, we must analyze his claims under Segura v. State, 749 N.E.2d 496 (Ind. 2001). In Segura, the Indiana Supreme Court held:

> Whether viewed as ineffective assistance of counsel or an involuntary plea, the postconviction court must resolve the factual issue of the materiality of the bad advice in the decision to plead, and postconviction relief may be granted if the plea can be shown to have been influenced by counsel's error. However, if the postconviction court finds that the petitioner would have pleaded guilty even if competently advised as to the penal consequences, the error in advice is immaterial to the decision to plead and there is no prejudice.

11

749 N.E.2d at 504-505. Thus, it is immaterial whether Hawkins's claim is characterized as an involuntary plea or ineffective assistance of counsel. See Willoughby v. State, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003) (citing Segura and holding that it was immaterial whether the petitioner's claim was characterized as an involuntary plea or ineffective assistance of counsel because, under either standard, the petitioner must demonstrate that the intimidation resulting from his trial counsel's failure to inform him of the single larceny rule was material to his decision to plead guilty), trans. denied.

Segura categorizes two main types of ineffective assistance of counsel cases. Smith v. State, 770 N.E.2d 290, 295 (Ind. 2002). The first category relates to "an unutilized defense or failure to mitigate a penalty." Willoughby, 792 N.E.2d at 563 (citing Segura, 749 N.E.2d at 507). The second category relates to "an improper advisement of penal consequences," and this category has two subcategories: (1) "claims of intimidation by exaggerated penalty or enticement by an understated maximum exposure;" or (2) "claims of incorrect advice as to the law." Id. (citing Segura, 749 N.E.2d at 504-505, 507). Hawkins claim falls under the first category.[4] In Segura, the Court held that "in the case of claims related to a defense or failure to mitigate a penalty, it must be shown that there is a reasonable probability that a more favorable result would have obtained in a competently run trial." 749 N.E.2d at 507.

During the hearing, Hawkins's trial counsel testified as follows:

---

[4] At one point, Hawkins states that his attorney "failed to file the correct motions to argue the habitual, leaving the petitioner with the assumption he could get as high as 80 years in prison which is false information." Appellant's Brief at 12. However, at the hearing, Hawkins stated to his trial counsel: "You told me that I was not habitual eligible." Transcript at 42. Further, the central argument in Hawkins's brief appears to be that his trial counsel failed to inform the prosecutor that the habitual offender charge was based on erroneous convictions.

12

Tony, you didn't plead guilty to the habitual. You told me you were not guilty of it, so if you're not guilty of it then fine. And it didn't matter to me because you pled guilty to the A felony for which you admitted to me you were guilty.

\* \* \* \* \*

There was a videotape of you using the cocaine that you were selling moments before Officer Whaley I believe tackled you like a linebacker and then incarcerated you. So their ability to prove you guilty of the A felony was not a real far fetch for me and I don't think it was a far fetch for you either, Tony. The habitual they couldn't have proven it, so that really wasn't an issue. But the A felony they had you cold. So did it behoove you to tell the prosecutor no, it really didn't matter because you weren't considering it as even a consideration for a sentence.

\* \* \* \* \*

Tony, the habitual was dismissed. They didn't pursue it. And that neither one of us considered that the State would prevail on the habitual, it wasn't really considered.

\* \* \* \* \*

Tony, you and I both knew they would not prevail on the habitual charge, the habitual enhancement, so that did not have any basis. But there was considerable concern that they may modify that to incorporate some records that may not have been on your NCIC sheet that you indicated to me but I don't remember other than it was something I believe in Michigan, that they may possibly locate that conviction. I don't even remember what it is, Tony, and it may not be in Michigan. I don't know why I remember that but my bottom line is it didn't behoove you because you and I knew they would not prevail on that charge as it was filed so that never was considered.

Transcript at 43-45.

Based upon the record, we cannot say that Hawkins has demonstrated that there is a reasonable probability that a more favorable result would have been obtained at trial or that he was prejudiced by his trial counsel's performance.

13

For the foregoing reasons, we affirm the post-conviction court's denial of Hawkins's petition for post-conviction relief.

Affirmed.

MAY, J., and CRONE, J., concur.