## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 07 2019, 6:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jacob T. Rigney
Rigney Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John Tompkins,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

October 7, 2019

Court of Appeals Case No.
18A-PC-2394

Appeal from the Marion Superior Court

The Honorable Sheila Carlisle, Judge

The Honorable Stanley E. Kroh, Magistrate

Trial Court Cause No.
49G03-1101-PC-431

**Brown, Judge.**

[1]    John Tompkins appeals the denial of his petition for post-conviction relief.  We affirm.

### Facts and Procedural History

[2]    The relevant facts as discussed in Tompkins's direct appeal follow:

> On December 27, 2010, Daphne Rutledge and Brittany Henderson went to Mary Orr's house to pick her up, and Tompkins, who was dating Orr, was at the house at the time. After picking up Orr, the three women went to Rutledge's home. Rutledge lived with her mother Dorothy and her nine-year-old daughter.  At some point, Rutledge, Henderson, and Orr left to run errands and stopped at a gas station, where they saw Tompkins, who was wearing an all gray jogging or sweat suit, white tshirt, and white tennis shoes and had braids in his hair. Instead of leaving the gas station with Rutledge and Henderson as planned, Orr left with Tompkins.
>
> Later that night, Rutledge and Henderson went to a bar in Greenwood, Indiana, to play poker.  While at the bar, Orr called Rutledge more than ten times.  After playing poker, Rutledge and Henderson returned to Rutledge's home.  At approximately 2:00 a.m., Tompkins called Rutledge using Orr's phone and began to argue with her, became "rude, loud, argumentative, and disrespectful," and stated "Oh, you think you're going to get my girlfriend.  B, you can come get some, too.  You can Google me . . . ." Transcript at 213-214.  The argument ended when Rutledge's phone died.  Rutledge, Henderson, and Rutledge's daughter all fell asleep on a bed in Rutledge's bedroom.
>
> At some point later during the night, Dorothy woke up to a loud beating coming from the entrance door to Rutledge's apartment, she then heard a "real loud kick of like a real loud bang," jumped

up, went into the hallway, and observed Tompkins climbing the stairs with a knife in his hand. *Id.* at 255. Dorothy yelled at Tompkins, but he ignored her and went inside Rutledge's room. Dorothy followed Tompkins into the room and observed that Tompkins was over Rutledge and hitting her.

Rutledge woke up as Tompkins was on top of her and stabbing her. Rutledge recognized Tompkins based on the gray jogging suit, shoes, and braids. Henderson was awakened by Tompkins when he jumped, in "an aggressive move like a pounce," onto the bed, and Henderson pulled Rutledge's daughter off of the bed with her. *Id.* at 285. Henderson observed Tompkins run out of the room. Henderson and Dorothy called 911.

The police officer responding to the scene observed fresh signs of forced entry. An ambulance transported Rutledge to the hospital where it was determined that she had been stabbed five times, suffered nerve damage in her right hand, and one of her kidneys had been stabbed. While in the hospital, Orr called Rutledge and then Tompkins spoke to Rutledge on the phone. Tompkins stated that he did not stab Rutledge and offered her "money to let the police know that he did not do it." *Id.* at 225. Rutledge told Tompkins no and that he "could burn in hell." *Id.* Later, Rutledge and Henderson were both shown a photo array and both identified Tompkins as the perpetrator.

*Tompkins v. State*, No. 49A04-1111-CR-690, slip op. at 2-4 (Ind. Ct. App. October 11, 2012).

[3]     On January 4, 2011, the State charged Tompkins with Count I, burglary as a class A felony; County II, aggravated battery as a class B felony; and Count III, battery as a class D felony. *Id.* at 4. On September 9, 2011, the State filed a notice of filing habitual offender. *Id.* On October 5, 2011, Tompkins filed a motion to exclude the testimony of Orr because she failed to appear for

depositions, and the court granted the motion. *Id.* On October 13, 2011, the State moved to amend Count II to correct a scrivener's error, which the court granted. *Id.*

[4] On October 17, 2011, prior to the beginning of a jury trial, the court and parties' counsel discussed motions by the State, and defense counsel requested a motion in limine with respect to any prior bad acts or criminal offenses by Tompkins that had not been reduced to conviction and "also, with the granting of the motion to exclude on Mary Orr, any testimony as to any statements she had made." Petitioner's Exhibit A at 24-25. The court granted the motion.

[5] During the direct examination of Henderson, she testified that Orr was panicked and left items in the car because she did not want Tompkins to know, and Tompkins's trial counsel objected and asserted that the testimony was "just literally what she said." Petitioner's Exhibit A at 105. Upon questioning by the court, Prosecutor Clifford Whitehead stated that he had advised Henderson of the court's rulings. The court advised the jury to disregard the last answer given by Henderson.

[6] During the direct examination of Rutledge, the following exchange occurred:

Q Did anybody call you while you were at the bar?

A Yes.

Q Who called you?

A Mary had called me and told me she was getting beat.

Q Okay.

[Defense Counsel]: Objection, Your Honor.

[Prosecutor Cary Solida]: I know. I know. We're –

[Defense Counsel]: We need to approach.

THE COURT: All right.

COUNSEL APPROACHED THE BENCH

[Defense Counsel]: All right. This witness knows the ruling.

[Prosecutor Solida]: But – but –

[Defense Counsel]: She said, Mary called me and said she was getting beat. That's so – a violation.

[Prosecutor Solida]: Did she say that? I didn't hear her.

[Defense Counsel]: I thought she said beat – she called me and said she was getting beat.

THE COURT: All I've got is, "Mary called me and told me she was going". That's all I've got.

[Defense Counsel]: Then you can listen to it. She said she told me she was getting beat is what she said. We can take a break and listen to it. I'm going to ask for a mistrial.

* * * * *

THE COURT: Okay. On the record. We did just listen to the witness's answer – the last answer that the Defense objected to.

PRELIMINARY QUESTIONS BY [Defense Counsel]:

Q Okay. Miss Rutledge, did the prosecutor have a conversation with you today, telling you that you were not to say anything about what Mary said?

A About what I heard or hearsay?

Q  Hearsay.  Anything that Mary said to you, you weren't supposed to say.

A  Okay.  Well, no, I wasn't aware of that.

Q  He didn't – the prosecutor didn't tell you that?

A  Yeah, he told me don't say what another person has said outside.  But she said it directly to me.  That's where it came to, to me.

[Defense Counsel]:  I don't have any other questions.  I'd like to know, as an officer of the Court, what [Prosecutor Solida] told her.

[Prosecutor Whitehead]:  It's my –

[Defense Counsel]:  Or – yeah.

[Prosecutor Whitehead]:  It's my understanding that [Prosecutor Solida] told her that – don't say – whatever anything else – anybody else said to you, don't say.

[Defense Counsel]:  Did you tell her that Mary was excluded, and you couldn't say anything about what she said?

[Prosecutor Solida]:  Well, that's not necessarily true.  I mean, if there's an exception to hearsay, she can say it.  And there may be an exception on this statement.

[Defense Counsel]:  I asked for a motion in limine, Your Honor, about anything she said.  And you said we were going to approach the bench before anything was said.

THE COURT:  Yes, with respect to Mary Orr and with respect to any prior bad acts of the defendant.  Those oral motions in limine were both granted.

[Defense Counsel]:  Judge, I'm going to ask for a mistrial and ask to charge it to the State and that Mr. Tompkins be discharged.

It's a – it happened twice today. If it was the first time, that's one thing. And her throwing out something like that, to me, that just the witness intentionally trying to get into evidence that Mary said that she was beaten by Mr. Tompkins. So we're going to ask for a mistrial and have it charged to the State and that Mr. Tompkins be released as to these charges.

* * * * *

[Prosecutor Solida]: Okay. And I – my understanding of the motion in limine was basically it was if it's inadmissible hearsay then it can't come in. But, I mean, just to –

THE COURT: So you wanted this witness to say that answer? Is that what you're saying?

[Prosecutor Solida]: Not – not like that, no. I wanted her to – I was going to ask her what Mary Orr asked her to do, because that would not be hearsay. That would be a question.

THE COURT: Okay. Well –

[Defense Counsel]: This is the –

[Prosecutor Solida]: I asked her a yes or no question: Did you receive any phone calls? And her response was that.

THE COURT: Right. But the – and because of her response, then the question is was she advised that – that the Court had ruled on the defendant's oral motion in limine that she was not to go into that?

[Prosecutor Solida]: She was here in the court, but she was not specifically called aside and instructed, at least not by myself.

THE COURT: What do you mean "she was here in the court"?

[Prosecutor Solida]: She was here during the – while we were arguing the motion in limine.

THE COURT: Well, she was here for part of what we were doing this morning. I don't know what part it was. She wasn't here for the whole – the whole time we were in here this morning because I saw her leave at one point.

[Defense Counsel]: And, Judge, I think after the first – I don't have a perfect memory of this. But I think after the first witness did it, you instructed the prosecutor to make sure no one else did it. I'm not a hundred percent sure on that, but I think that's what happened. You instructed him to make sure it didn't happen again.

THE COURT: Well, I did ask if they had instructed as to the Court's rulings. Go ahead, State. Finish your argument.

[Prosecutor Solida]: I have previously advised her about what hearsay was and how statements are not to be used in court. I – I don't know if an admonishment would've made – a specific admonishment today would've made a difference or not. [Prosecutor Whitehead] informs me that she was in the room for the argument in that regard to the motion in limine. Again, I took the motion in limine to be a restatement of the Rules of Evidence. And my next question to her was going to be what question – "Did she ask you any questions? Did she ask you to do anything?" And my understanding of the Rules of Evidence is, is that would not be – that that would be admissible, not as a statement.

[Defense Counsel]: Even –

[Prosecutor Solida]: But as a command or a question.

[Defense Counsel]: Even if that was true, Judge, the ruling was before anything like that came out, we came in front of the bench and talked about it. It wasn't that well, if I think it's admissible, I can introduce it. No. It was approach the bench. The same thing with me talking about Daphne's husband and all that stuff. Before I could say anything, I have to come and ask you. And that was the ruling. And just to keep talking, my – what I asked

for was that all statements, not non-hearsay statements – I said all statements be motioned out – be in – limited [sic] out.

THE COURT: Okay. Well, this is – I'm going to have to go back and look at some other things on the record. It's not a situation that I take lightly, by any means. . . .

* * * * *

THE COURT: But I know this: It should not have come out because I made a ruling this morning to keep that out. So I know this: It should've never been said.

[Defense Counsel]: And, Judge –

THE COURT: And I can't take it back, and I can't drill the jurors and say, Did that – did you catch that? You know, I mean, everything points to the fact that I'm probably going to have to err on the side of caution with the defendant's rights because I don't know at this point who heard what. And all I need is one juror to have heard that, and that's enough to grant a mistrial. I will say this: I do not believe that it was the State's intention to have that witness say that. That question did not call for it. She went beyond what the answer would've called for. You simply said, "Who called you?" Her answer was, "Mary called me and told me she was getting beat." Okay. So "Mary called me" would've been all that that question asked for.

[Defense Counsel]: Judge, if I could maybe state one thing. You know, and I've dealt with [Prosecutor Solida] before. I totally trust [him].

THE COURT: Uh-huh.

[Defense Counsel]: But I think that he had a duty to tell that witness, "Hey, you can't say this", and not think she heard it in the courtroom, but a duty to go and specifically say to her, "Hey, you can't say anything that Mary says because it's been limited

[sic] out." She's not a lawyer. And it sounds like they didn't do that.

THE COURT: Did anyone do that? I know that you say she was in the courtroom. I –

[Prosecutor Solida]: Not specifically, no. I –

THE COURT: Okay.

[Prosecutor Solida]: We –

THE COURT: So, I mean –

[Prosecutor Whitehead]: We – we told her, "You cannot say anything that anybody else told you." We did not say – go through Mary, the defendant, anybody like that. And –

THE COURT: And you did not reiterate the Court's rulings on the defendant's oral motion in limine as to any prior bad acts of the defendant, which this clearly fell under, and any statements by Mary?

[Prosecutor Whitehead]: I did not, Your Honor.

THE COURT: Okay.

[Prosecutor Solida]: No, Judge.

THE COURT: I mean, I noticed when she came on the witness stand that she was the same person that had been in the courtroom this morning during some of our preliminary motions. But I did also notice that person left the courtroom at some point. I'm not sure that having them in the back of the courtroom is sufficient when the Court asks you to make sure all your witnesses are advised of the Court's ruling. But I will give you that she was in the courtroom, and so, you know, I don't think it was an intentional not telling her so that this would happen. I don't think that at all. I don't think the record supports that in

any way.  Okay?  That being said, I – you know, I'll have to take this under advisement.

Petitioner's Exhibit 1 at 174-189.  On October 18, 2011, the court granted Tompkins's motion for a mistrial.

[7] A second jury trial began on October 19, 2011.  *Tompkins*, slip op. at 4.  The jury found Tompkins guilty as charged under Counts I and II and not guilty under Count III.  *Id.*  Tompkins admitted to being an habitual offender.  *Id.* The court vacated judgment of conviction under Count II due to double jeopardy concerns and sentenced Tompkins to twenty years in the Department of Correction for his conviction under Count I and enhanced the sentence by thirty years due to the habitual offender finding for an aggregate sentence of fifty years.  *Id.*

[8] On direct appeal, Tompkins argued that the retrial constituted a double jeopardy violation, that the trial court abused its discretion in admitting certain testimony, and that the prosecutor committed prosecutorial misconduct that resulted in fundamental error.  *Id.* at 2.  This Court affirmed.  *Id.*

[9] On November 18, 2013, Tompkins filed a petition for post-conviction relief alleging in part that he received ineffective assistance because his trial counsel successfully argued for a mistrial but made the argument in such a way as to preclude discharge.  On September 15, 2015, the court held a hearing. Tompkins's trial counsel testified that he had been an attorney since 1990 or 1991.  With respect to the motion in limine, he testified he believed he asked for

a discharge. When asked what was necessary to show when asking for a discharge at a mistrial, he answered: "I think bad faith from the prosecutor. I'm not sure exactly." Post-Conviction Transcript at 16. He stated that he remembered making the statement that he trusted the prosecutor. When asked, "That seems to either neuter your argument for asking for a discharge, or putting the Court in a position to where they can't truly determine whether a discharge[] is . . . possible . . . [d]o you agree to that," he answered affirmatively. *Id.* at 17-18. On cross-examination, he testified that he was a commissioner for about five years in the Marion County D felony and misdemeanor courts, that he had been doing criminal law since 1991, that he had handled many major felony cases prior to representing Tompkins, that he had a duty to be truthful or have candor with the court, and "I was not going to say that I thought [Prosecutor Solida] did that intentionally when I – everything I know about him tells me, no, he didn't do it intentionally." *Id.* at 21.

[10] On January 17, 2018, the court entered an order denying Tompkins's petition. The order states:

### FINDINGS OF FACT

\* \* \* \* \*

6. [Tompkins's trial counsel] has been practicing law since 1991 primarily in the area of criminal defense. [He] served as a master commissioner in the Marion County D-felony and misdemeanor courts for approximately five years. Since then, his practice has been comprised almost entirely of criminal defense work and he

has tried between eighty and one hundred jury trials, many of which were major felony trials.

[Trial counsel] recalls representing Tompkins as private counsel; he reviewed his trial file prior to the PCR hearing. [Trial counsel] believes that he had enough time to adequately prepare for trial including time to investigate, speak to witnesses, conduct depositions, etc.

* * * * *

During the first trial, [trial counsel] recalls asking for a mistrial, which was granted, he believes because the alleged victim said something which had been limined out. He believes that he also asked for a discharge. [Trial counsel] also testified that he had a duty to be truthful and have candor with the Court, and that he was not going to say that he thought [Prosecutor Solida] did that intentionally when everything he knew about him tells him that he did not do it intentionally.

* * * * *

## CONCLUSIONS OF LAW

* * * * *

Lastly, [Tompkins] claims that trial counsel was ineffective for successfully arguing for mistrial but making his argument in such a way as to preclude discharge.

* * * * *

The Indiana Court of Appeals held that "the record supports the trial court's conclusion that the prosecutor did not intend to force Tompkins to move for a mistrial, and accordingly Tompkins's second trial did not violate the constitutional or statutory proscriptions against double jeopardy." [*Tompkins*, slip op. at] 11-12.

Specifically, [Tompkins] takes issue with trial counsel's following comment to the court, during the discussion regarding the mistrial request: "Judge, if I could maybe state one thing. You know, and I've dealt with [Prosecutor Solida] before. I totally trust [him]." Tr. 188.

The Court notes that this statement by [trial counsel] was made to the court during a lengthy discussion of the issue and immediately after the court had already stated, "I will say this: I do not believe that it was the State's intention to have that witness say that. The question did not call for it. She went beyond the answer would've called for. [The State] simply said, 'Who called you?'" Tr. 187. This Court also notes that [trial counsel] had already made a timely and thorough motion for mistrial and discharge . . . . Tr. 179. [Trial counsel] also subsequently argued to the court that it had instructed the prosecutor, after the first witness violated the motion in limine, to make sure no one else did it. Tr. 181. He further argued that the limine ruling applied to all statements by Mary Orr, not just hearsay statements. *See* Tr. 183.

"The purpose of an ineffective assistance of counsel claim is not to [']grade counsel's performance.[']" *Id.* [Trial counsel] was a zealous advocate for his client, during the entirety of this trial and during his motion for mistrial and discharge. He timely and forcefully moved for mistrial and discharge on his client's behalf. Regarding his candor to the tribunal when he mentioned that he trusted the prosecutor based upon previously [sic] interactions, [Tompkins] has not shown this to constitute ineffective assistance. [Tompkins] has not shown that this truthful comment to the trial court equates to deficient performance. Nor has [he] proven any reasonable probability that the court would have granted discharge had [trial counsel] not made the brief statement at issue.

Without prejudice or deficient performance, this claim of [sic] fails, as does the entirety of Tompkins' ineffective assistance of trial counsel claim.

Appellant's Appendix Volume II at 26-41.

[11]   On February 5, 2018, Tompkins filed a motion to reconsider and argued in part that he was not afforded an opportunity to respond to the State's proposed findings of facts. A notation at the top of Tompkins's motion to reconsider states: "Granted, in part. The order entered 1-17-2018 stands, however, the court will consider amended proposed Findings of Fact and Conclusions of Law. The court directs counsel to have amended proposed FF/CL filed by April 24, 2018." Appellant's Appendix Volume XV at 44. On June 7, 2018, the court stated: "The court has reviewed it's [sic] previous order denying post-conviction relief. The court denies the Motion to Re-consider." Appellant's Appendix Volume II at 60.

## *Discussion*

[12]   Before discussing Tompkins's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004); Ind. Post-Conviction Rule 1(5). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher*, 810 N.E.2d at 679. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which

leaves us with a definite and firm conviction that a mistake has been made." *Id.* In this review, we accept findings of fact unless clearly erroneous, but we accord no deference to conclusions of law. *Id.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Id.*

[13] The issue is whether Tompkins was denied the effective assistance of trial counsel. Generally, to prevail on a claim of ineffective assistance of counsel a petitioner must demonstrate both that his counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), *reh'g denied*). A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *Id.* To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Perez v. State*, 748 N.E.2d 853, 854 (Ind. 2001). Failure to satisfy either prong will cause the claim to fail. *French*, 778 N.E.2d at 824. Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. *Id.*

[14] When considering a claim of ineffective assistance of counsel, a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind. 2001). "[C]ounsel's performance

is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). Evidence of isolated poor strategy, inexperience, or bad tactics will not support a claim of ineffective assistance of counsel. *Clark v. State*, 668 N.E.2d 1206, 1211 (Ind. 1996), *reh'g denied*, *cert. denied*, 520 U.S. 1171, 117 S. Ct. 1438 (1997). "Reasonable strategy is not subject to judicial second guesses." *Burr v. State*, 492 N.E.2d 306, 309 (Ind. 1986). We "will not lightly speculate as to what may or may not have been an advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

[15] Tompkins argues that he was denied the effective assistance of counsel with regard to the request to bar retrial pursuant to Ind. Code § 35-41-4-3. He argues that "[i]t seems clear from the Trial Court's ruling on the Petition for Post-Conviction relief that it treated the request for a discharge as a motion to bar further prosecution pursuant to I.C. 35-41-4-3." Appellant's Brief at 12. He points to his trial counsel's statement that he trusted the prosecutor and asserts that he "did not even inquire regarding the State's intent or any discussion they had with the witness regarding the motion in limine." *Id.* at 13. He contends that his trial counsel's argument to the trial court suggested he believed the court could rule in his favor based on Rutledge's intent, rather than the prosecutor's intent, but the "plain text of Ind. Code § 35-41-4-3 makes it clear that is incorrect." *Id.* He argues that this Court's determination was correct in

that the record in no way demonstrated the prosecutor's intent to cause a mistrial but this was "because [his trial counsel] failed to even attempt to develop the appropriate record to succeed on the request." *Id.* at 14.

[16]  The State maintains that the performance of Tompkins's trial counsel was not deficient, points out that he successfully moved for a mistrial after Rutledge gave unsolicited hearsay testimony, and notes that his trial counsel also moved for discharge. It contends that the information contained in the record spoke directly to the prosecutor's intent and that it is hardly clear what more trial counsel could have done to develop the record given the facts and circumstances before the trial court. It argues that trial counsel's comment about trusting the prosecutor was part of a broader argument about whether the trial court should grant his request for mistrial and discharge. It also asserts that Tompkins cannot show prejudice.

[17]  Ind. Code § 35-41-4-3 is titled "When prosecution barred for same offense" and provides:

> (a) A prosecution is barred if there was a former prosecution of the defendant based on the same facts and for commission of the same offense and if:
>
> * * * * *
>
> (2) the former prosecution was terminated after the jury was impaneled and sworn or, in a trial by the court without a jury, after the first witness was sworn, unless (i) the defendant consented to the termination or waived, by motion to dismiss or otherwise, his right to object to the termination, (ii) it was physically impossible to proceed

with the trial in conformity with law, (iii) there was a legal defect in the proceedings that would make any judgment entered upon a verdict reversible as a matter of law, (iv) prejudicial conduct, in or outside the courtroom, made it impossible to proceed with the trial without injustice to either the defendant or the state, (v) the jury was unable to agree on a verdict, or (vi) false statements of a juror on voir dire prevented a fair trial.

(b) If the prosecuting authority brought about any of the circumstances in subdivisions (a)(2)(i) through (a)(2)(vi) of this section, with intent to cause termination of the trial, another prosecution is barred.

[18] The record reveals that Tompkins's trial counsel requested a motion in limine, which the trial court granted; requested a mistrial following Rutledge's testimony that Orr called her and told her she was getting beat, which the trial court granted; requested a discharge; asked Rutledge if the prosecutor told her not to say anything about what Orr said; stated "I'd like to know, as an officer of the Court what [Prosecutor Solida] told" Rutledge; asked Prosecutor Solida if he told Rutledge that Orr was excluded and that she could not say anything about what Orr said; and asserted to the trial judge "after the first witness did it, you instructed the prosecutor to make sure no one else did it."  Petitioner's Exhibit A at 178, 181.  To the extent trial counsel stated that he had previously dealt with Prosecutor Solida and trusted him, we note his next statement:

> But I think that he had a duty to tell that witness, "Hey, you can't say this", and not think she heard it in the courtroom, but a duty to go and specifically say to her, "Hey, you can't say anything that Mary says because it's been limited [sic] out."  She's not a lawyer.  And it sounds like they didn't do that.

*Id.* at 188. We also note that the trial court stated: "I will say this: I do not believe that it was the State's intention to have that witness say that. That question did not call for it. She went beyond what the answer would've called for. You simply said, 'Who called you?'" *Id.* at 187. We cannot say that the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court.

[19] For the foregoing reasons, we affirm the denial of Tompkins's petition for post-conviction relief.

[20] Affirmed.

Altice, J., and Tavitas, J., concur.